**CECCANTI, INC.**

v.

**The UNITED STATES.**

No. 559–82C.

United States Claims Court.

Oct. 31, 1984.

Wade R. Dann, Seattle, Wash., for plaintiff. Craig D. Magnusson, Seattle, Wash., of counsel.

Thomas W.B. Porter, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant. Robert M. Simmons, Office of Gen. Counsel, Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

The plaintiff Ceccanti, Inc., brings this action under the Contract Disputes Act seeking compensation for additional expenses incurred during the performance of a contract with the defendant United States. The plaintiff has moved for summary judgment on the issue of liability for high water levels which allegedly delayed work and resulted in the plaintiff incurring additional costs totaling $47,845.82. The defendant filed a cross motion for summary judgment contending that under the terms of the contract, the plaintiff bore the risk of high water levels.

After considering the entire record and hearing oral argument, the Court finds that the contract clearly allocated the risk of high water levels to the plaintiff. Therefore, the plaintiff's motion for summary judgment is denied. Because the plaintiff's complaint includes a claim based on an allegedly defective project design, and because both parties agree that this claim involves material disputed issues of fact, the defendant's motion for summary judgment is granted in part and denied in part.

## FACTS

On September 25, 1981, the plaintiff contracted with the United States Department of Agriculture Forest Service to undertake river bank stabilization and bridge pier protection with respect to an already existing Forest Service bridge located over a stream which feeds into Lake Cushman. Lake Cushman is situated on the Olympic Peninsula in Washington State and is a man-made lake with a dam at its southern end. The dam, and therefore the water level, is controlled by the City of Tacoma.

The total contract price was fixed at $111,803.30. Though there is some dispute as to the length of the contract, it appears that both parties expected the work to be completed within sixty days. But because of an ambiguity in the contract, the Forest Service extended the length of the contract for an additional sixty days.

The defendant issued a Notice to Proceed on October 21, 1981. Upon arrival at the site on November 3, 1981, the plaintiff found that the water level was higher than what it considered to be workable. The Contracting Officer disagreed, noting several items which could be performed despite the high water. The plaintiff performed these items, and on December 10, 1981 the Forest Service stopped charging time. On December 28, 1981 an Order to Resume Work was issued. High water in mid-February 1982 again required a partial and then a total Suspension of Work order; the latter was issued on February 23, 1982. The plaintiff was instructed to demobilize

under the assumption that no more work would be done until the following fall. But shortly thereafter the water level fell, and on March 17, 1982, a Notice to Resume was issued. The plaintiff remobilized and, despite rising water levels, substantially completed the project by April 21, 1982, at which time the work was inspected and accepted by the Forest Service.

The plaintiff submitted a number of claims to the Contracting Officer pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a) (1982), totaling $52,327.78. Of this total, $47,845.82 was allegedly the result of interference caused by the high water levels, specifically the costs of remobilization and equipment standby time. The Contracting Officer denied all claims in his final decision dated July 20, 1982.

## DISCUSSION

■■■ The plaintiff's main contention is that the high water levels caused unreasonable delays, and that therefore an equitable adjustment of the contract price is justified. Principally, the plaintiff argues that the contract is ambiguous with regard to liability for ground conditions, and that the plaintiff's interpretation, if reasonable, should prevail over even an equally reasonable interpretation by the defendant. It is well settled that the interpretation of a contract is a question of law, *Dynamics Corporation of America v. United States*, 182 Ct.Cl. 62, 71–72, 389 F.2d 424, 429 (1968), and if the plaintiff's interpretation is reasonable, it will prevail. *A & K Plumbing & Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 721 (1983). However, this rule only applies where the contract drafted by the Government is in fact ambiguous, and where the plaintiff's interpretation is reasonable. A mere dispute over the terms does not constitute ambiguity, and an interpretation which is merely possible is not necessarily reasonable. *Tri-Cor, Inc. v. United States*, 198 Ct.Cl. 187, 211, 458 F.2d 112, 126 (1972).

To justify its interpretation of the contract, the plaintiff argues that the contract must be considered as a whole. Specifically, the plaintiff relies upon the Control of Work clause, which permits the Contracting Officer "to issue orders to suspend the work wholly or in part for such period of time as he determines necessary due to: (1) weather or ground conditions unsuitable for prosecution of the work or detrimental to project access...." Supplemental General Provisions to Form 6300–42, § 30.1. The plaintiff also relies upon the Government's Responsibility for Utilities clause, which provides that "[t]he Government will notify all utility companies or other parties affected and make arrangements for all necessary adjustments of the public or private utility fixtures, pipelines, and other appurtenances affected by the construction." Forest Service, General Provisions, Public Works Contract, § 50.5 (December 1979). The plaintiff claims that the Control of Work clause only refers to natural ground conditions such as rain or snow, and that the Responsibility for Utilities clause indicates that the Government will be responsible for contacting local utilities and making the necessary arrangements with them. The two clauses combined allegedly result in the Government being liable for conditions caused by a local utility, City of Tacoma, when that utility failed to make arrangements to accommodate the plaintiff's work by lowering the water level.

■■■ However, the plaintiff fails to justify limiting the provision regarding ground conditions (§ 30.1) to only natural conditions. Furthermore, the section on Responsibility for Utilities (§ 50.5) refers only to the defendant's legal responsibility to the public, not to the plaintiff, to insure that the necessary adjustments are made so that utility fixtures, pipelines, and other appurtenances are not adversely affected by the construction. Finally, in interpreting a contract, an interpretation which gives a reasonable meaning to the whole is favored over one which leaves a portion of it "useless, inexplicable, inoperative, void, insignificant, meaningless, or superfluous...." *Hol-Gar Manufacturing Corp. v. United States*, 169 Ct.Cl. 384, 395, 351

F.2d 972, 979 (1965). The defendant is correct in pointing out that the interpretation which plaintiff urges this Court to adopt would render the Prosecution of Work clause meaningless. That section states: "Reservoir elevations for Lake Cushman are controlled by the City of Tacoma. Information relating to high and low water elevations, time periods of low water and flow data is available from the Tacoma City and Light Business Office (phone: (206) 383–2471)." Supplemental General Provisions to Form 6300–42, § 40.-2(c). The only reasonable purpose served by this section of the contract is to put the contractor on notice that the water is exclusively controlled by the City of Tacoma and that the contractor should contact the City of Tacoma directly. Given the inapplicability of § 50.5 to the issue of liability for high water levels, the only reasonable interpretation of the contract as a whole, which includes viewing § 30.1 in light of § 40.2(c), results in a finding that the water level did constitute a ground condition, and that the Contracting Officer was free to suspend work under § 30.1 without compensating the plaintiff. This Court therefore finds that the contract was not ambiguous when read as a whole, and that the plaintiff's interpretation limiting liability to natural ground conditions is unreasonable.

The plaintiff also contends that even if the water level constituted a ground condition within the meaning of § 30.1, the duration of the suspension was itself unreasonable and therefore compensable under the Suspension of Work clause, which requires compensation for unreasonable delays or interruptions by the Contracting Officer. The Suspension of Work clause states:

> If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted by an act of the Contracting Officer in the administration of this contract, ... an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessari-

ly caused by such unreasonable suspension, delay, or interruption....
41 C.F.R. § 1–7.602–32(b) (1981).

The plaintiff cites *Merritt-Chapman & Scott Corp. v. United States*, 194 Ct.Cl. 461, 439 F.2d 185 (1971), for the proposition that the duration of the delay caused by the high water levels in the instant case was unreasonable and therefore compensable. In *Merritt*, the plaintiff incurred additional expenses when another contractor failed to have the job site cleared by a specific date. The Court held that under the facts of the case the delay was unreasonable and therefore compensable. However, the delay in *Merritt* was caused by a contractor who was also working for the Government, rather than by a third party beyond the control of either of the contracting parties. Furthermore, in *Merritt* the Government had expressly guaranteed the readiness of the job site by a specific date and had assumed the risk of a delay. Plaintiff also cites *Fruehauf Corp. v. United States*, 218 Ct.Cl. 456, 587 F.2d 486 (1978) to show that the delay need not be the result of the Government's negligence for it to be unreasonable. Like *Merritt*, however, *Fruehauf* involved a delay caused by another contractor under the Government's supervision.

■ The general rule is that where a delay is caused by a third party not under the Government's control, the Government is not liable for the delay thereby caused. *Maxwell v. United States*, 156 Ct.Cl. 72, 297 F.2d 554 (1962) (flood control channel work delayed by failure of utility owners to remove pipes by commencement of work date). Furthermore, given that this Court finds that the water level was a *ground* condition for which the plaintiff assumed liability under the Control of Work clause of the contract, there is no reason to shift liability to the defendant on account of the duration of the delay caused by that ground condition.

The plaintiff claims that prior to bidding on the project a representative of the defendant, Robert Robertson, assured the plaintiff that the water would be at a work-

able level by the date set for the work to commence.* The plaintiff claims that pursuant to 15 U.S.C. § 637b(a)(2) (1982) the defendant, through Robertson, had an implied duty to disclose fully, truthfully, and accurately any information relevant to the contract, and that the plaintiff had an implied right to rely on that information in preparing its bid. That section states:

> (a) For any contract to be let by any Federal agency, such agency shall provide to any small business concern upon its request—
>
>     \*     \*     \*     \*     \*     \*
>
> (2) the name and telephone number of an employee of such agency to answer questions with respect to such contract.

15 U.S.C. § 637b(a)(2).

 The Government, however, is not bound by the unauthorized oral representations of its agents. *Max Drill, Inc. v. United States,* 192 Ct.Cl. 608, 624, 427 F.2d 1233, 1243 (1970). Moreover, the Conditions Affecting Work clause of the contract specifically denies any responsibility for representations made by Government employees prior to the execution of the contract. The clause states: "The Government assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of this contract, unless such understanding or representations by the Government are expressly stated in the contract." 41 C.F.R. § 1–7.602–14 (1981). In addition, the plaintiff does not deny the defendant's allegation that the plaintiff did not attend a pre-bid conference held on August 26, 1981, at which the Contracting Officer's representative called special attention to the fact that the City of Tacoma exercised exclusive control over the water levels. Furthermore, the defendant points out that the bid invitation specifically listed the Contracting Officer and provided his phone number for questions regarding the contract. The plaintiff did not contact the Contracting

Officer regarding responsibility for water levels prior to bidding on the project. Finally, the plaintiff concedes that it did not contact the City of Tacoma prior to bidding on the contract. In sum, this Court finds that plaintiff's claim of an implied right to rely upon Mr. Robertson's misrepresentations is without merit.

 The plaintiff also argues that actions by the Government subsequent to the execution of the contract indicate that the Government considered itself responsible for making arrangements with the City of Tacoma. Specifically, the plaintiff refers to attempts made by Forest Service representatives to arrange for lower water levels. However, as correctly pointed out by the defendant, efforts made in the spirit of cooperation are hardly sufficient to shift liability from the plaintiff to the defendant where liability is specifically allocated to the plaintiff under the contract.

## CONCLUSION

 Based on the foregoing analysis, the plaintiff has failed to show that the Government is liable for the delays caused by the high water levels. The plaintiff's motion for summary judgment is therefore denied. Because the plaintiff's claim that the project allegedly was defectively designed raises material disputed issues of fact, that claim cannot be disposed of by a motion for summary judgment. The defendant's motion is therefore granted in part with respect to the issue of liability for high water levels and excessive inspection (which claim the plaintiff has abandoned) and denied in part with respect to the alleged defective project design.

---

\* The actual representations made by Robertson are a matter of factual dispute. However, for the purposes of these motions, the plaintiff's version will be assumed to be accurate.