## DYNAMICS CORPORATION OF AMERICA

v.

## The UNITED STATES.

### No. 549–84C.

United States Claims Court.

July 1, 1986.

Isaac N. Groner, Washington, D.C., for plaintiff.

Terrence S. Hartman, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

MARGOLIS, Judge.

The plaintiff, Dynamics Corporation of America [Dynamics], seeks review of two final decisions of a Government Contracting Officer, recovery of $3,822,072.26 withheld pursuant to these decisions and relief from an outstanding indebtedness resulting from the Contracting Officer's decisions. The defendant United States seeks to uphold the Contracting Officer's decisions and counterclaims to recover the outstanding balance due.

Jurisdiction is founded on the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (1982). Both parties have moved for summary judgment.

For reasons discussed, the Court grants the defendant's motion as to Count I (six-month adjustment provision), but denies the remainder of the defendant's motion. The plaintiff's motion as to Count II (Economic Price Adjustment Clause) is granted.

## FACTS

In March 1981 the Government issued an Invitation for Bids [IFB No. DAAJ09–81–B–0158] for the production of electric generator sets to be delivered to the U.S. Army. The IFB included a draft contract with required delivery dates for each of the first two program years of performance. An option to increase each program year order by 150% and a performance schedule for these first and second program year options were also included.

Bidders were asked to include anticipated inflation in their price. A Government forecast of inflation for the required delivery schedule was provided, and contractors were to use the forecast in preparing their bids.

As noted in the IFB, the Government forecasts were obtained from Bureau of Labor Statistics [BLS] indices of inflation. Composite estimates of inflation for each program year were embodied in Table I of the IFB as escalation factors.

The relevant portion of Table I is reproduced below:

Table I

ANTICIPATED COMPOSITE ESCALATION FACTORS

· · · · · ·

| | Program Year | Factor |
| --- | --- | --- |
| First Program Year | Jun 81—Mar 83 | 1.1399 |
| Second Program Year | Mar 82—Sep 83 | 1.2044 |
| First Program Year Option | Apr 82—Apr 84 | 1.2389 |
| Second Program Year Option | Nov 82—Jan 85 | 1.3077 |

Table I was part of an IFB provision entitled "ADJUSTMENT FOR UNANTICIPATED ECONOMIC FLUCTUATION: INDEX METHOD," which allowed for adjustments in contract price if actual inflation differed significantly from forecasted inflation. If inflation varied from the forecasted values by more than 2%, the contract price would be adjusted by 70% of the difference. These adjustments were to be "made by contract modification within six months after the end of the applicable program year or option period." [Adjustment Clause, Section H–6n].

Because Dynamics wanted to propose earlier delivery dates and was unsure about how the adjustment clause would be applied to early delivery, it requested clarification from the Contracting Officer. In particular, Dynamics wanted to know if the inflation factors in Table I of the IFB would be changed to reflect an earlier delivery schedule. If this was true, Dynamics would incorporate less inflation into the bid prices. Otherwise, Dynamics' bid prices would need to account for inflation over the full contract term originally proposed in the IFB.

The Contracting Officer responded to this and other inquiries with a mailgram sent to all bidders. The pertinent part of his response is reproduced below:

3. PARA H–6 (ADJUSTMENT FOR UNANTICIPATED ECONOMIC FLUCTUATION—INDEX METHOD) IS TO BE REVIEWED AND EVALUATED IN ITS ENTIRETY. INDIVIDUAL SENTENCES OR PARAGRAPHS ARE NOT DESIGNED TO STAND ON THEIR OWN OR BE STATEMENTS OF FACT, BUT CONTRIBUTE TO THE OVERALL UNDERSTANDING OF THE INTENDED PURPOSE OF THE CLAUSE.

4. FOR FINAL EPA [ECONOMIC PRICE ADJUSTMENT CLAUSE] ADJUSTMENT PURPOSES, THE ADJUSTING FACTOR WILL BE BASED ON THE MONTH OF ACTUAL DELIVERY OR SCHEDULED DELIVERY WHICH EVER IS EARLIER, SEE PARA H–6(2) [sic].

5. IN THE EVENT THE OPTION IS NOT EXERCISED AT ONE TIME, THAT IS, IF IT IS EXERCISED IN SEPARATE INCREMENTS, THERE WILL BE SEPARATE EPA ADJUSTMENTS TO REFLECT THE DIFFERENT TIME PERIODS. THE TIME PERIODS WILL BE FROM THE TIME OF EXERCISE THROUGH FINAL DELIVERY (SCHEDULED OR ACTUAL, WHICH EVER IS EARLIER) OF EACH SEPARATE INCREMETN [sic] (SEE PARA H–6(4)).

6. CONTRACTORS ARE NOT REQUIRED TO AGREE WITH ESCALATION FACTORS GIVEN IN PARA

H–6E IN PREPARING THEIR BIDS, HOWEVER THE GOVERNMENT WILL ASSUME THAT THE FACTORS IN PARA H–6E WERE USED WHEN FINAL ADJUSTMENT IS CALCULATED.

Mailgram of May 8, 1981.

Dynamics interpreted this response to mean that the inflation factors in Table I would vary with the delivery schedule and that the BLS base line of forecasted inflation would be used to predict inflation factors for an early schedule. In other words, Dynamics asserts that the bid it submitted included less inflation than would a bid based on the originally proposed inflation factors and delivery schedule.

The Government awarded the contract to Dynamics in June 1981, adopting Dynamics' early delivery schedule. Shortly thereafter, on July 7, Dynamics wrote to the Contracting Officer requesting that the original inflation factors in Table I be revised in accordance with the early delivery schedule. After numerous discussions, it became apparent that the Contracting Officer would not modify the original inflation factors. Dynamics asked for a final decision, but the Contracting Officer refused because BLS indices would not be available until approximately five months after the end of the program year.

Discussions about the appropriate adjustment factors continued throughout the first, second and third program year option periods. By the time a final decision covering the first three periods was rendered on January 17, 1984, it was clear that inflation had not been as high as predicted. Dynamics admitted that a downward adjustment in contract price was appropriate but insisted that the adjustment should be based on the difference between projected inflation during its early delivery schedule and actual inflation over that same period.

In essence, Dynamics argued that the contract price adjustment made by the Contracting Officer was unduly large and that the Contracting Officer failed to consider the draft contract as modified by the early delivery schedule. In the Contracting Officer's view, Dynamics' bid was assumed to include inflation for the entire period originally proposed in the IFB. Hence, Dynamics' bid price supposedly included a large amount of inflation that never occurred, and a large price adjustment was necessary. Using the inflation factors from Table I of the IFB, the Contracting Officer issued modifications with his January 17, 1984 final decision reducing the contract price by $1,643,930.26.

The final decision and modifications came approximately one year and four months after the expiration of the first program year, approximately eleven months after the expiration of the second program year, and approximately eight months after the expiration of the first year option period. No adjustments occurred within six months of any program year or option period as specified in the contract.

The Contracting Officer issued another final decision and modification on August 1, 1985, covering the second year option period. This modification was based on the same reasoning as the earlier modifications and like the others, was issued more than six months after the expiration of the contract period it covered. The August 1, 1985 modification reduced the contract price by an additional $2,178,142.

Dynamics seeks a determination that none of the modifications was appropriate, or that Dynamics' method of price adjustment for unexpected inflation should have been used.

## DISCUSSION

### COUNT I

Dynamics claims that the Government's right to adjustment expired six months after the end of each program period and that the Government's failure to plead waiver and estoppel in its answer and amended answer precludes consideration of whether the six-month adjustment provision was waived. Therefore, Dynamics argues that the contract modifications should be set aside and that Dynamics should re-

ceive even those funds it would not otherwise have been entitled to under its own interpretation of the inflation adjustment clause.

■ While the Government's answer and amended answer do not expressly use the words "waiver" or "estoppel," the answers and the accompanying counterclaim are replete with the suggestion that the six-month adjustment requirement was waived. As such, the failure to use specific legal terminology does not bar consideration of waiver as an affirmative defense. *See Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255 (8th Cir.1977) (interpreting Rule 8(c) of Fed.R.Civ.P. which is analogous to Claims Court Rule 8). In any event, relevant evidence has been offered, and both parties have exhaustively discussed this issue. Thus, consideration of the defense on the merits is appropriate. *Cities Service Helex, Inc. v. United States*, 211 Ct.Cl. 222, 234 n. 14, 543 F.2d 1306, 1313 n. 14 (1976).

■ The dispute over appropriate inflation factors began shortly after the contract was awarded and persisted until its completion. Numerous meetings, letters and conversations throughout the term of the contract demonstrate that both parties were fully aware of their disagreements and were working toward favorable resolution. All of the alleged deadlines passed without comment or protest.

In fact, Dynamics complained that the first set of modifications was premature and, in a letter dated December 7, 1983, added:

> We propose to commence a study. We will review the methods of computation of the forecasted index line. We will then examine for differences in the kind of data and method of computation in the actual index line and attempt to quantify the effect of such differences. The result will be a cogent and justifiable basis for price adjustment.

This letter was sent well after the expiration of the first three alleged deadlines. The record clearly reveals that both parties

effectively waived the six-month adjustment requirement. It was not until October 25, 1984, several months after the last supposed deadline, that Dynamics filed the complaint in this suit alleging that Dynamics steadfastly adhered to the six-month adjustment requirement.

Our predecessor court has stated:

> When a party with knowledge or the means of knowledge of his rights and of the material facts does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or permits the other party to deal with the subject matter under the belief that the transaction has been recognized, or abstains for a considerable length of time from impeaching it, so that the other is reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, though it be originally impeachable, becomes unimpeachable. (citations omitted).

*Harvey Radio Laboratories, Inc. v. United States*, 126 Ct.Cl. 383, 391–92, 115 F.Supp. 444, 449 (1953), *cert. denied*, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954); *See also Gresham & Company, Inc. v. United States*, 200 Ct.Cl. 97, 119, 470 F.2d 542, 554–55 (1972). Dynamics' behavior well after the expiration of the supposed deadlines makes the transaction unimpeachable. The Government's delay in issuing modifications was reasonable, given the conduct of the parties, the nature of the dispute, and with respect to the last modification, the pendency of this suit.

■ Even so, Dynamics asserts that regardless of any waiver, the mere passage of time precludes the Government's claim under the principle set forth in *Cuban Truck and Equipment Co. v. United States*, 166 Ct.Cl. 381, 333 F.2d 873 (1964), *cert. denied*, 382 U.S. 844, 86 S.Ct. 65, 15 L.Ed.2d 85 (1965). *Cuban Truck* involved a statute of limitations imposed by Congress, and not, as here, a contractual provision that the parties were free to waive. In the instant case, both parties by their conduct could and did impliedly agree to

waive the six-month adjustment requirement. Thus, *Cuban Truck* simply does not apply to the circumstances of this case.

## COUNT II

Finally, Dynamics argues that if the Government's right to a price adjustment has not expired, Dynamics is entitled to the price adjustments it has claimed since the contract was awarded.

 Where contract language is ambiguous, "[t]he terms of a contract are construed against the drafter." *Rapp v. United States*, 2 Cl.Ct. 694, 698 (1983). A mere dispute over the terms of a contract does not necessarily constitute ambiguity. *Ceccanti, Inc. v. United States*, 6 Cl.Ct. 526, 528 (1984). Rather, the terms of the contract must be considered as a whole, *see Bishop Engineering Co. v. United States*, 180 Ct.Cl. 411, 416, (1967), and "must be afforded the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances." *Firestone Tire & Rubber Co. v. United States*, 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971). Where ambiguous language has been used, the risk of ambiguity, lack of clarity, and absence of proper warning is on the drafting party. *Sturm v. United States*, 190 Ct.Cl. 691, 697, 421 F.2d 723, 727 (1970).

 Read in its entirety, the adjustment clause could reasonably suggest that the inflation factors listed in Table I of the IFB were intimately tied to the proposed delivery dates. Early delivery would, therefore, warrant adjustment of the figures predicting inflation during early performance.

Indeed, the suggestion that escalation factors were adjustable is fortified by language appearing elsewhere in the draft contract which provides:

> H-6 ADJUSTMENT FOR UNANTIC-
> IPATED ECONOMIC FLUCTUA-
> TION: INDEX METHOD (CONT'D)
> h. (1) The Program Year periods shown for contract and option quantities in Table I above are definitized by the following assumed milestones:

> (a) bids opened in APR 81;
> (b) contract award in JUN 81—at which time First Program Year will be funded if First Article is not required;
>
> \* \* \* \* \* \*
>
> (2) In addition, the periods in Table I shall be adjusted to reflect actual delivery or scheduled delivery, whichever is earlier.

The word "periods" used alone and in connection with "Program Year" in subparagraphs h(1) and h(2) could indicate a change in the entire inflation period (both dates and escalation factors) or merely a change in a program year without considering the attendant change in predicted inflation. Either interpretation is reasonable when the clause is read in its entirety.

Section H-6 also does not necessarily contradict Dynamics' interpretation since the Section can be interpreted to mean that escalation factors predicted by the Government for the actual contract performance period were assumed to be included in the contract price. Suffice it to say there was a reasonable uncertainty as to how the adjustment clause would be applied by the parties if delivery dates earlier than those specified in the IFB were accepted by the Government.

 A contractor normally has a duty to seek clarification where a contract is obviously ambiguous. *Mountain Home Contractors v. United States*, 192 Ct.Cl. 16, 21–22, 425 F.2d 1260, 1263 (1970). A contractor who fails to respond to this obligation assumes the risk of an incorrect interpretation. *Jamsar, Inc. v. United States*, 194 Ct.Cl. 819, 442 F.2d 930 (1971). Dynamics fulfilled this obligation when it inquired of the Government as to whether the "composite escalation factors change as well as the time periods." The Government's response that "... the adjusting factor will be based on the month of actual delivery or scheduled delivery which ever is earlier, see para H–6(2) [sic]," seems to indicate that the factors would change with early delivery.

■ Clarification having been sought by Dynamics, the burden was on the Government to clarify its position if its interpretation of the contract was to prevail. *See Singer-General Precision, Inc. v. United States*, 192 Ct.Cl. 435, 447–48, 427 F.2d 1187, 1193 (1970); *see also Unidynamics/St. Louis, Inc.*, ASBCA No. 17592, 73–2 BCA ¶ 10,360 at 48,933 (1973). Had the Government intended the escalation factors to remain the same and only the program dates to change, it should have responded ·to Dynamics' inquiry so as to make this clear. The Government's answer, if not actually misleading, failed to adequately respond to Dynamics' inquiry.

■ Hence, Dynamics was entitled to rely on its interpretation of the language in question, provided that its interpretation was reasonable. *See A & K Plumbing & Mechanical, Inc., v. United States*, 1 Cl.Ct. 716, 721 (1983); *see also Straga v. United States*, 8 Cl.Ct. 61, 68–69 (1985). Dynamics' interpretation need only be within the "zone of reasonableness" since the Government, as the author of the contract, must shoulder the "major task of seeing that . . . the words of the agreement communicate the proper notions. . . ." *WPC Enterprises, Inc. v. United States*, 163 Ct.Cl. 1, 6, 323 F.2d 874, 877 (1963). Under the facts of this case, the Court finds that Dynamics' interpretation was both possible and reasonable. *See Ceccanti, Inc., supra* at 528.

The goal of the inflation adjustment clause was to accurately estimate inflation. Under Dynamics' interpretation, if inflation was exactly as predicted by the Government and the escalation factors were tied to performance, no further adjustments to the contract would be necessary. Under the Government's interpretation, even if inflation was exactly as predicted by the BLS base line, an adjustment would probably have to be made for early delivery to compensate for the excess inflation incorporated in the bid price. Dynamics' understanding of the inflation adjustment clause was logical.

CONCLUSION

The Government's motion for summary judgment as to Count I is granted. The remainder of the Government's motion is denied. The plaintiff's motion for summary judgment as to Count II is granted.