**DYNAMICS CORPORATION OF AMERICA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 549–84C.**

United States Claims Court.

May 18, 1989.

Isaac N. Groner, Washington D.C., for plaintiff; Walter H. Fleischer, of counsel.

Terrence S. Hartman, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

### OPINION

MARGOLIS, Judge.

This contract case is before the court on defendant's motion for partial summary judgment on Count III of the complaint, and plaintiff's cross-motion for summary judgment on Count III. After a careful review of the entire record, and after hearing oral argument, the court has determined that the Economic Price Adjustment

clause in the contract requires the government to negotiate a price adjustment. This opinion does not address the question of damages as urged by the plaintiff. The contract only requires negotiations between the parties on an appropriate adjustment. Accordingly, plaintiff's motion for summary judgment is granted in part and denied in part, and the defendant's cross-motion for partial summary judgment is denied.

## FACTS

In June 1981, the defendant United States, acting through the United States Army Troop Support and Aviation Materiel Readiness Command, awarded the plaintiff, Dynamics Corporation, contract No. DAAJ09–81–C–1085 pursuant to an Invitation for Bids (IFB) for the production of 60 KW generator sets. The contract contained an Economic Price Adjustment (EPA) clause for unanticipated economic fluctuation, which was tied to the index for "Machinery and Equipment, Code 11" published monthly in the periodical "Producer Prices and Price Indexes" by the United States Department of Labor, Bureau of Labor Statistics (BLS).

Paragraph g.(1) of the EPA clause, contract section H–6, provides:

The labor and materials index shall be deemed to mean the index for "Machinery and Equipment, Code 11" as published monthly in the periodical "Producer Prices and Price Indexes" by the U.S. Department of Labor, Bureau of Labor Statistics (BLS).

Furthermore, subparagraph (i) of the EPA clause provides:

In the event the BLS discontinues determining the index referred to in subparagraph g.(1), the parties shall agree upon an appropriate substitute for the discontinued index. *In the event the BLS alters its method of calculating the index, appropriate adjustments shall be made by the parties to place the changed index on a comparable ba-*
*sis with the index calculated before the change.*

(Emphasis added).

Counts I and II of plaintiff's complaint were decided by the court on July 1, 1986. *Dynamics Corporation of America v. United States,* 10 Cl.Ct. 275 (1986). These counts concerned the contracting officer's price modifications based on Table I of the "ADJUSTMENT FOR UNANTICIPATED ECONOMIC FLUCTUATION: INDEX METHOD" contained in the government's invitation for bids, No. DAAJ09–81–B–0158. The contracting officer reduced the contract price by $1,643,930.26, based on the inflation adjustment clause, in a final decision on January 17, 1984. On Count I, the court held that the plaintiff waived the six-month adjustment provision of the contract, allowing the government to make appropriate adjustments after the period had elapsed. *Id.* at 279–80. The court granted the plaintiff's motion for summary judgment on Count II, holding that the inflation adjustment clause relating to escalation factors was ambiguous and that the plaintiff was entitled to rely on its own reasonable interpretation of the clause due to the government's failure to adequately respond to plaintiff's inquiry. *Id.* at 280–81.

Count III of the plaintiff's complaint alleges that the BLS altered its method of calculating the Code 11 index under subparagraph (i) of the EPA clause. Therefore, according to the plaintiff, the failure of the defendant to enter negotiations to make "appropriate adjustments" to "place the changed index on a comparable basis with the index calculated before the change" at plaintiff's request was a breach of the contract. As a result, plaintiff contends that the government's issuance of contract modifications and the withholding of allegedly owed funds of $528,290.46 were invalid.

Plaintiff relies on the official statements of the BLS and the affidavit of Dr. Bernard Norwood, an economist, to support its position that there was a change in the method of calculating Code 11. According to plaintiff, the BLS publicly stated in the *BLS*

*Handbook of Methods* (1982 & 1988 eds.), that the BLS changed its method of calculating Code 11. The BLS announced in these publications that it was making "the most comprehensive overhaul of industrial price methodology in the program's history." The BLS revised the Producer Price Index (PPI), of which Code 11 is a part, and created the Producer Price Index Revision (PPIR). The revisions began in January of 1980 and were completed in December of 1985. Plaintiff contends, therefore, that significant changes altering the method of calculating Commodity Code 11 were made during the contract period that are sufficient to require the adjustments referred to in subparagraph (i) of the EPA clause.

Plaintiff offers the declaration of Norwood to outline the changes the BLS made in calculating the index. Norwood stated that under the revisions, the BLS moved from judgmental to scientific probability sampling techniques. He stated that the the method of selecting the measured commodities and transfers was changed by the revisions. The revisions adopted scientific statistical methods to make this selection, while under the prior method, the BLS requested price data directly from the largest companies producing a given commodity. In addition, he stated that the BLS now surveys firms of all sizes and does not limit the commodity data gathered to volume-selling products.

In addition, the revisions purportedly place greater emphasis on the actual transportation price at the time of shipment, rather than listings of order prices. The BLS reported the revised "methodology is more systematic than the traditional methodology in concentrating on actual transaction prices...." Also, the BLS excluded imports in calculating the index under the revisions, where previously they were included. At the same time, the BLS decided to include exports. Norwood also stated that changes in the sampling universe altered the method of calculation. Finally, the BLS expanded the commodities that were covered by the index and also dropped certain commodities. The BLS handbook noted, on the commodity revisions, that:

Price indexes are now usually calculated by constructing an index for each reporting establishment's price and then averaging these indexes, with appropriate establishment weights, to derive the commodity index. Under the former methodology, an average price would be computed directly from individual company prices.

*BLS Handbook of Methods*, 131 (1988 ed.).

The plaintiff argues that alterations in sampling techniques, determination of transaction prices, and changes in commodity selection were changes in the method of calculating Code 11 as contemplated in subparagraph (i) of the EPA clause. Although the official publications of the BLS use the term "methodology," instead of the "method of calculating" language of the EPA clause, the plaintiff contends that the difference in terminology is irrelevant, and that the BLS has in fact changed the method of calculating Code 11.

The defendant states that when the plaintiff first asserted that the BLS altered its method of calculating the index, Army contracting officials contacted the BLS to determine whether the agency in fact altered its method of calculation. In response to the Army's inquiry, Thomas Tibbetts of the BLS stated that the agency had not altered its method of calculation. The contracting officer thereafter adjusted the contract price in accordance with the published index. Defendant maintains that the BLS has not changed its method of calculation and is not required to enter into negotiations with plaintiff to make adjustments.

The defendant relies on the statements of Tibbetts, who was the Assistant Commissioner for Industrial Prices and Price Indexes at the BLS for 8 years and was the official responsible for calculation of the index for Machinery and Equipment, Code 11, to support its position that the BLS did not change its method of calculation of the index during the contract period. Tibbetts stated in a declaration for the government that:

The *formula* utilized by BLS for calculating Commodity Code 11, *i.e.*, the stan-

dard fixed weighted Laspeyres price index method, has not changed since the early part of this century. BLS, therefore, utilized the same method for calculating Commodity Code 11 in 1981 through 1985, as it did in 1980.

(Emphasis added). In a later declaration, Tibbetts stressed that the changes in methodology are changes in "technical parameters" only (sample designs and lists of products), and can not be considered changes in the method of calculation. Defendant contends that the changes are not significant because they are simply technical improvements and that, because the formula for calculating the index has remained the same, the "method of calculating" was not altered.

## DISCUSSION

*Contract Interpretation*

■ The parties have essentially asserted two different interpretations of the contract language in question. Where contract language is subject to at least two reasonable interpretations, it may be said to be ambiguous. *Salem Engineering & Construction Corporation v. United States,* 2 Cl.Ct. 803, 806 (1983). However, the court finds that subparagraph (i) can not be considered ambiguous. In considering the purpose of the EPA clause, it is clear that the phrase "method of calculating" is not ambiguous. The fact that the parties disagree on the meaning of the phrase does not lead to the conclusion that it is ambiguous. As the Court of Claims stated, "[c]ontracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to their meaning." *Southern Construction Co., Inc. v. United States,* 176 Ct.Cl. 1339, 1361, 364 F.2d 439, 453 (1966).

■ The parties dispute the scope of the application of the contract language. The defendant would have the court read the language narrowly, and confine its meaning to changes in the formula for calculating the index. The court concludes, however, that the scope of the phrase "method of calculating" is more embracing. It is clear that changes in sampling techniques,

the determination of transaction prices, and the sampling universe, can result in real changes in the computation of the index. The court is also satisfied that the EPA clause was designed to account for just these types of real changes. Accordingly, the plain meaning and the clear purpose of the contract language mandates the conclusion that the BLS changed its method of calculation.

■ The record reflects that the BLS stated, with regard to the revisions of the PPI, that they represent "the most comprehensive overhaul of industrial price methodology in the program's history." *BLS Handbook of Methods,* 126 (1988 ed.). Given this statement, and the defendant's admissions that numerous changes were in fact made by the BLS, the court finds that the plaintiff has presented the only reasonable interpretation of the contract. When considering a party's proposed interpretation, the court must determine whether the interpretation falls "within the zone of reasonableness." *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 6, 323 F.2d 874, 876 (1963). The court has determined that defendant's proposed interpretation of subparagraph (i) does not fall within this zone.

The purpose of the EPA clause is straightforward and clear—it is designed to account for changes in the calculation of the Code 11 index. This understanding is reinforced by the Defense Acquisition Regulations (DAR) relating to the preparation of economic price adjustment clauses, which both parties did not discuss. The second sentence of subparagraph (i) of section H-6 of the clause, states that "[i]n the event the BLS alters its method of calculating the index, appropriate adjustments shall be made by the parties to place the changed index on a comparable basis with the index calculated before the change." This sentence reflects the guidelines provided by DAR section 3-404.3(c)(3) c.4, which state with regard to drafting a price adjustment clause that "provision may be made to adjust the economic fluctuation computations in the event there is such a substantial alteration to the method of computing the index as to negate the *origi-*

nal intent of the parties." 32 C.F.R. § 3–404.3(c)(3)c.4 (1981) (emphasis added). Accordingly, it is the purpose and intent of the parties in including the EPA clause that should guide the court. *See Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1185 (Fed Cir.1988) (interpreting EPA clause and stating that " '[t]he [DAR] is law which governs the award and interpretation of contracts as fully as if it were made a part thereof.' *Chris Berg, Inc. v. United States*, 192 Ct.Cl. 176, 182, 426 F.2d 314, 317 (1970)").

Keeping in mind the purpose of the EPA clause indicated by its plain meaning and supported by DAR section 3–404.3(c)(3)c.4, it is clear that if the court were to accept defendant's assertion that the EPA clause is not triggered given the admitted changes, the clause would essentially be rendered meaningless. It would be difficult to imagine the scope changes necessary to trigger the clause under the defendant's proposed interpretation. It is a time honored principle of contract interpretation that courts should construe contract provisions harmoniously and avoid interpretations that would render provisions meaningless. *Tombigbee Constructors v. United States*, 190 Ct.Cl. 615, 630, 420 F.2d 1037, 1045 (1970). Accordingly, defendant's proposed interpretation is not reasonable, and the clause is not ambiguous.

Moreover, the defendant asserts that the "method of calculating" has not changed because, as its expert stated, the Laspeyres index formula, which has been in use for decades, is still used despite the revisions.

The use of a different *formula* for calculating the index, however, would seem to implicate the first sentence of subparagraph (i), rather than the second. That sentence states that "[i]n the event the BLS *discontinues determining the index* referred to in subparagraph g.(1), the parties shall agree upon an appropriate substitute for the discontinued index." (Emphasis added). Likewise DAR section 3–404.-3(c)(3)c.4, upon which subparagraph (i) is based, provides for the "substitution of another index if ... an appropriate index is reasonably available." 32 C.F.R. § 3–404.3(c)(3)c.4 (1981). The defendant argues that the Laspeyres index formula is the "method of calculating" under the second sentence of subparagraph (i). However, when considering the spectrum of possible changes, the use of a different index formula would actually approach a "discontinu[ance]" under the first sentence.[1]

It appears that the defendant is addressing the issue of continuity in the use of the Laspeyres index formula, rather than the question of alteration of the method of calculating the index. The language of subparagraph (i) clearly delineates a distinction between the two occurrences. The first sentence of subparagraph (i) addresses the discontinuance of the Code 11 index, and the second sentence addresses the alteration of the method of calculating the index. Both situations, however, require a similar outcome—the parties must negotiate an adjustment using an index comparable to that which would have been used had

---

1. The BLS described the Producer Price Index as the product of the Laspeyres formula. The 1988 version of the *BLS Handbook of Methods* discusses the formula as follows:

Index calculation
In concept, the Producer Price Index is calculated according to a modified Laspeyres formula:
$$I_i = (\textstyle\sum Q_a P_i / \textstyle\sum Q_a P_0) \times 100$$
where:
$P_0$ is the price of a commodity in the comparison period;
$P_i$ is its price currently; and
$Q_a$ represents the quantity shipped during the weight-base period.
An alternative formula more closely approximates the actual computation procedure:
$$I_i = [ (\textstyle\sum Q_a P_0 \, (P_i/P_0)) \, / \, \textstyle\sum Q_a P_0] \times 100$$
In this form, the index is the weighted average of price relatives, i.e., price ratios for each item ($P_i/P_0$).
*BLS Handbook of Methods*, 130 (1988 ed.)
According to this description, the Laspeyres index formula is the computational identity of the PPI. The use of an alternative formula, which defendant suggests would be necessary in order for the court to find that an alteration in the "method of calculating" occurred, would more likely constitute a "discontinu[ance]." The PPI would cease to be the same body of data if BLS discontinued use of the Laspeyres formula. *See* W. Mendenhall & J. Reinmuth, *Statistics for Management and Economics*, 617–18 (Duxbury Press 4th ed. 1982).

the BLS not discontinued or altered the use of the index.

The defendant's position, however, in arguing that a change in the use of the Laspeyres index formula is required for there to be a change in the method of calculation fails to recognize the distinction drawn between these two occurrences in subparagraph (i). The defendant has focused on the issue of continuity, rather than alteration. For instance, in a letter dated June 25, 1984 to Colonel Everette C. Rochon, a Deputy Director of Procurement and Production for the Army, Tibbetts stated "I emphatically reject the contention that the *continuity* of the Producer Price Index (PPI) for machinery and equipment (commodity code 11) has been lost because of recent changes in the index sample and methodology." (Emphasis added). In his declaration of May 1, 1987, Tibbetts also referred to the *"continuity* of BLS's traditional indexes." (Emphasis added). These statements, and defendant's argument that an alteration could only occur upon a change in the use of the Laspeyres index formula, indicates that the defendant has confused the question of continuity with that of alteration. Subparagraph (i) clearly indicates that the two are not synonymous.

Finally, the defendant contends that if the court were to accept the plaintiff's argument, it would be essentially rewriting the contract by deleting the term "method" and adding the term "methodology" in its place. In this regard, the defendant calls attention to the fact that the dictionary provides different definitions of the terms "method" and "methodology." The court finds that the defendant's argument presents a distinction without a difference. What the defendant fails to observe is that to adopt its own interpretation would require the court to delete the term "method" and substitute it with the term "formula,"

a meaning that is clearly not suggested by the facts.

The dictionary defines the term "methodology" more broadly than the term "method" and also indicates that the two are nearly synonymous.[2] To rely simply on the dictionary definitions in determining whether in fact the "method of calculating" the index was changed, however, only tends to strengthen plaintiff's argument. The plain meaning of the term "methodology," as it was used by the BLS, is broader and more encompassing. As this court stated in *Aluminum Company of America v. United States*, 2 Cl.Ct. 771 (1983), "[w]here the provisions of a contract are phrased in clear and unambiguous language, 'the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties....' " *Id.* at 776 (citing *Elden v. United States*, 223 Ct.Cl. 239, 252, 617 F.2d 254, 260–61 (1980)). A "methodology" by necessity includes the specific "methods" of mathematical computation. Therefore, changes in methodology can be said to include changes in specific methods. It is not reasonable for the defendant to suggest that "the most comprehensive overhaul of industrial price methodology in the program's history" could have no impact on particular methods included within the methodology. However, it must be emphasized that semantics are not controlling here. It is the purpose of the EPA clause that presents the dispositive consideration.

*BLS Changes in the Method of Calculation*

The court has concluded that the BLS revisions were a change in the "method of calculating" Commodity Code 11. The official statements of the BLS published in the *BLS Handbook of Methods* (1982 & 1988 eds.) and other BLS publications, indicate that there was a change in the method of

---

2. For useful definitions, *see Webster's Third New International Dictionary of the English Language Unabridged,* (Merriam–Webster 1986) 1422–23. The definition of "method" is stated as "a systematic procedure, technique, or mode of inquiry employed by or proper to a particular science, art, or discipline: *METHODOLOGY....*" (Emphasis added). "Method-

ology" is defined as "a body of methods, procedures, working concepts, rules, and postulates employed by a science, art or discipline...." Thus, consistent with its plain meaning, the term "methodology" is somewhat broader than the term "method," although the two can be considered interchangeable in certain contexts.

calculation. Although the BLS describes the revisions as changes in the "methodology," the revisions undertaken by the BLS are clearly the type of changes contemplated within the meaning of subparagraph (i). The formula used by the BLS may have remained the same, but the data to which the formula is applied have undergone significant methodological changes. The Laspeyres formula is applied to price data for particular commodities and transactions, and the BLS changed the selection and treatment of commodities when it revised the PPI.

The statements of the BLS relied on by the plaintiff are more persuasive than the declaration of the defendant's expert. The BLS summarized the revisions as "the first comprehensive overhaul of the *entire* theory, *methods,* and procedures *used by BLS to construct indexes* measuring price changes in nonretail markets." *BLS Handbook of Methods,* 50 (1982 ed.) (emphasis added). With regard to sampling techniques, the BLS stated that "[o]ne of the fundamental differences between the traditional PPI methodology and the PPIR methodology is the switch from judgmental selection of companies and products to probability sampling." *BLS Handbook of Methods,* 127 (1988 ed.). The BLS made similar statements on the exclusion of imports and the inclusion of exports, stating that "[i]mports are no longer included within the PPI universe; ..." *id.* at 126, while "the share of the domestic industry's output which is exported will be a part of the PPIR." *BLS Handbook of Methods,* 50 (1982 ed.) In addition, the BLS commented, with regard to its expansion of the coverage of commodities under the index, that there was a "broadening of specifications," and that "industry-classified product indexes are now available in much greater abundance and detail than was the case ... before the conversion to the new methodology." *BLS Handbook of Methods,* 131 (1988 ed.). These statements are just a sample of many heralding pronouncements by the BLS.

The BLS's own statements on the revisions are, it seems, a more appropriate source of guidance in interpreting subparagraph (i). Surely, the parties would not be litigating this issue had not the agency made such sweeping statements regarding the revisions of the PPI. The BLS's statements were also made as part of that agency's regular course of operations and not in contemplation of pending litigation. The defendant's expert stated that BLS has not changed the "method of calculating" Code 11 because the formula has not changed. However, the defendant's · expert is not charged with the interpretation of the contract. It is the role of the court to make that determination.

## CONCLUSION

The court is satisfied that the methodology changes reported by the BLS as a result of the revisions constituted a change in the "method of calculating" Code 11. The second sentence of subparagraph (i) states "[i]n the event the BLS alters its method of calculating the index, appropriate adjustment shall be made by the parties...." Accordingly, the contract requires that the parties attempt to reach agreement through negotiation to make "appropriate adjustments" in the contract price employing an index on "a comparable basis with the index calculated before the change." The refusal of the government to abide by this provision was a breach of contract.

This decision does not, however, reach the question of the amount of damages, if any, that the plaintiff may obtain. Counsel for the defendant stated at the hearing that the government has the capability to make the required calculations and that the BLS has done such work in the past. Transcript at 41. The court has only determined that it was a breach of contract for the government to refuse to negotiate an adjustment tied to the Code 11 index as it was calculated before the revisions. The question of damages is reserved for another day. Accordingly, the plaintiff's motion for summary judgment on Count III is granted in part and denied in part, and the defendant's motion for partial summary judgment is denied. The parties shall enter negotiations in accordance with this opinion and file a status report with the Clerk's

Office within 60 days from the date of this opinion.