**INTERNATIONAL BUSINESS INVESTMENTS, INC.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 542–87C.

United States Claims Court.

May 31, 1989.

Donald B. Barnhill, San Antonio, Texas, for plaintiff.

Paula J. Barton, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action is before the court on parties' cross-motions for summary judgment. The question at bar is whether a contract for guard and supervisory services was ambiguous, thus qualifying plaintiff for an equitable adjustment. Plaintiff alleged that the contractual usage of the terms "contract representative" and "shift supervisor" within similar contract specifications supported its interpretation that both positions were to be filled by one person. Defendant disagreed, stating that the terms of the contract clearly required two separate individuals to fill two different positions.

## FACTS

On July 26, 1983, the United States, acting through the Department of Navy, awarded plaintiff, International Business Investments, Inc. (IBI), a small business set-aside contract for security guard services at the Naval Underwater Systems Center (NUSC) installation in Newport, Rhode Island. The contract price, with twelve modifications, amounted to $2,637,676.20. The proposed services included continuous, around-the-clock surveillance of a 191–acre installation accessed by one main gate and two secondary gates.

Neither the contract specifications nor amendments to the specifications contained a comprehensive list of personnel necessary to perform the contract. Various references, however, were made to a superintendent and a shift supervisor. At the onset of performance, plaintiff interpreted these references as requiring only one person to act in both capacities. Soon thereafter, plaintiff was notified by defendant that plaintiff's interpretation was inconsistent with the contract. Defendant maintained that the contract required the hiring of two different individuals and ordered plaintiff to comply with this interpretation. Plaintiff did so under protest. Upon contract completion, plaintiff filed a claim with the contracting officer for an equitable adjustment to the contract price. Plaintiff contended that its bid price contemplated the hiring of only one individual to perform the dual functions of superintendent and shift supervisor and that defendant's order constituted a change to the contract entitling it to an upward equitable adjustment to its contract price. The contracting officer denied plaintiff's claim in a final decision dated July 2, 1987. Plaintiff then filed a claim for $77,813.51 in this court. Defendant's response was a motion for summary judgment, to which plaintiff cross-moved.

## DISCUSSION

The Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), grants this court jurisdiction to review plaintiff's contract claim. Since the contracting officer allowed plaintiff to bring a direct action to this court, plaintiff has exhausted its administrative remedies as required under the Contract Disputes Act (CDA), 41 U.S.C. § 605(a) (1982), and thus its complaint is properly before the court. The CDA also mandates that the court adjudicate the matter *de novo, i.e.,* the legal conclusions made by the contracting officer bear no weight on the court's present determination. While it is apparent that the court has jurisdiction in this matter, the action requested by plaintiff in its cross-motion is far less clear. Plaintiff, in rather inconsistent pleadings, argued that defendant's motion for summary judg-

ment was inappropriate because factual issues were in dispute; yet in the same brief and on the same facts as presented in defendant's motion, plaintiff argued that the pending matter was devoid of any disputed factual issues and that summary judgment should be awarded in plaintiff's favor. Due to plaintiff's apparent confusion, the court must preliminarily determine whether the case is ripe for summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). A genuine issue of material fact is present if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit, and its materiality is determined by the substantive law applicable to the case. *Id.* Defendant has the burden of establishing that there are no genuine issues in dispute and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). As the party opposing the motion, plaintiff has the burden of providing sufficient evidence, not necessarily admissible at trial, that a genuine issue of material fact indeed exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Any evidence presented by plaintiff is to be believed and all justifiable inferences drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

Plaintiff argued that defendant's motion for summary judgment was inappropriate because there was a factual dispute over whether defendant agreed to plaintiff's interpretation of the contract requirements. Plaintiff alleged that one of its agents telephoned the contracting officer's office, spoke to a government official, and received the go-ahead to hire only one person to act simultaneously as superintendent and shift supervisor. Plaintiff did not, however, identify the government official or specify his or her title. Defendant denied the existence of any oral agreement, but argued alternatively, that if such an agreement was made, the government spokesperson was not authorized to bind the government. Plaintiff contended that this open-ended question constituted a genuine issue of material fact which would defeat summary judgment.

■ While it may be true that a factual discord exists between the parties, plaintiff's mere inference that it spoke to an unnamed governmental agent is not enough to bar summary judgment in this instance. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir.1988). Plaintiff must produce sufficient evidence to show that the agreement, assuming that it actually took place, would affect the outcome of the suit. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. For that to happen, plaintiff must identify the government official who purported to confirm plaintiff's interpretation of the contract so that the authority of that official to bind the United States contractually may be ascertained. The United States may only be bound to contracts, and changes or interpretations thereof, made by government officials possessing the requisite contracting authority. Thus, only an agreement made by an authorized agent would have any bearing in this proceeding. *Miami Metro. Bldg. Corp. v. United States*, 180 Ct.Cl. 503, 514 (1967) (citing *Wilber Nat'l Bank v. United States*, 294 U.S. 120, 123–24, 55 S.Ct. 362, 363–64, 79 L.Ed. 798 (1935)). The government will not be bound by an unauthorized official, even though the representative is a government employee. *Max Drill, Inc. v. United States*, 192 Ct.Cl. 608, 624, 427 F.2d 1233, 1243 (1970); *Ceccanti, Inc. v. United States*, 6 Cl.Ct. 526, 528 (1984); *Enrico Roman, Inc. v. United States*, 2 Cl.Ct. 104, 107 (1983). Since plaintiff was not able to provide sufficient evidence to support its contentions, plaintiff's objections to the propriety of defendant's motion for summary judgment must be denied. Consequently, the resolution of this case turns solely on the parties'

differing interpretations of contractual terms—a clear matter of law. *Dynamics Corp. v. United States*, 182 Ct.Cl. 62, 71–72, 389 F.2d 424, 429 (1968); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965); *Industrial Indem. Co. v. United States*, 14 Cl.Ct. 351, 356 (1988). Thus, the court finds summary judgment to be the proper vehicle to resolve this matter.[1]

▮ The court must now address the fundamental issue at bar: whether the language of the contract permitted plaintiff to hire only one employee to act as both superintendent and shift supervisor. To answer this question, the court must venture into the realm of contract interpretation to ascertain analytically whether or not an ambiguity existed in the contract, or more specifically, whether the contract specifications regarding required personnel were ambiguous. *Enrico Roman*, 2 Cl.Ct. at 106. A contract is ambiguous if it sustains the interpretations advanced by both parties. *Max Drill*, 192 Ct.Cl. at 627, 427 F.2d at 1245. The interpretations, however, must both be reasonable. *Opalack v. United States*, 5 Cl.Ct. 349, 359 (1984). An interpretation which is merely possible is not necessarily reasonable. *Tri–Cor, Inc. v. United States*, 198 Ct.Cl. 187, 211, 458 F.2d 112, 126 (1972); *Ceccanti*, 6 Cl.Ct. at 528. In addition, contract terms are not rendered ambiguous by the mere fact that the parties disagree as to their meanings. There must be a reasonable uncertainty of meaning. *ITT Arctic Services, Inc. v. United States*, 207 Ct.Cl. 743, 767, 524 F.2d 680, 692–93 (1975). *Southern Constr. Co. v. United States*, 176 Ct.Cl. 1339, 1361–62, 364 F.2d 439, 453 (1966).

▮ Underlying plaintiff's claim was the argument that its interpretation of the contract was reasonable. Plaintiff contended that the contractual usage of the terms "superintendent" and "shift supervisor" was intended only as a description of different responsibilities, both capable of being held contemporaneously by the same person. Plaintiff's decision to employ only one person to satisfy both requirements conformed with that interpretation. Defendant countered that plaintiff's interpretation was unreasonable. Defendant asserted that the contractual use of different titles and the incompatibility of the duties assigned to each demonstrated that two separate positions were intended by the contract.

A perlustration of the contract and its amendments reveals that the contract, while interpreted differently by the parties and admittedly not crystal clear, can reasonably sustain only one interpretation. The contract's specific use of distinct terms to delineate the functions of supervisor and superintendent provides the first clue that separate individuals were intended. While it is true, as plaintiff argues, that differing contractual terms are not by themselves determinative of the issue, the contract's use of different terms signals the court to the possibility that two different employees were, at the least, contemplated by defendant.

Review of the contract definitions of the contractual terms reveals distinguishing characteristics proving that two classifications were in fact present. The superintendent was explicitly labeled in the contract as the contract representative with authority to act for the contractor.[2] As contractor representative, the superintendent was obligated to supervise the contractor's work force, to act as the contractor liason with the government, and to make himself available by phone during business and non-business hours, twenty-four hours

---

1. In its opposition, plaintiff also argued that a factual dispute existed as to whether plaintiff relied on its own interpretation of the contract. Because defendant, in its reply to plaintiff's opposition, subsequently admitted this fact, the issue is not in dispute and this court need not consider it in determining whether summary judgment is appropriate.

2. Section 00004, Paragraph 1(b), Special Paragraphs:

   Contractor Representative—A foremen, superintendent or, manager assigned in accordance with the *"Superintendence By Contractor"* clause, Section 00004.

a day.[3] The superintendent was also specifically named as head of quality control.[4] Some of the duties required in that capacity included performing inspections and preparing the corresponding documentation. Moreover, the contract amendments referred to the superintendent by name and strictly forbade the superintendent from serving as an on-duty guard.[5] The shift supervisor, on the other hand, could act as on-guard duty for up to three hours per one twenty-four hour shift in an emergency.[6] The shift supervisor was responsible for maintaining a post on base and for supervising employees twenty-four hours a day.[7] Supervisory duties included: oversight of the daily transition between shifts and control of guard assignments, behavioral problems, attire and training.[8] In addition, the shift supervisor was responsible for inspecting all posts and patrols assigned to the shift and was specifically named to provide on site supervision of employees.[9]

A comparison of duties falling under the titles of contract representative and shift supervisor distinguishes the two functions and demonstrates that the two positions could not be shared in one capacity. While the assignment of supervisory duties to both capacities raised some question as to whether the titles refer to the same type of supervision, the last two clauses of Section 00005, Paragraph 10 differentiated the two. The contract representative, *i.e.*, the superintendent, was charged with supervision of the entire work force, while a designated person, *i.e.*, the shift supervisor, was as-

3. Section 00005, Paragraph 10:
   The Contractor shall furnish managerial, administrative, and direct labor personnel to accomplish all work required. The Contractor shall designate a Representative who shall supervise the Contractor's work force and be the Contractor's liaison with the Government.
   Section 00004, Paragraph 32: *Office of the Contractor.*
   The Contractor shall maintain an office in the Government furnished space at which he or his representative may be reached by telephone during all normal government working hours from 8:00 am to 4:30 p.m. The telephone shall be listed in the Contractor's name. He shall maintain a toll free emergency telephone (or accept collect calls from authorized Government personnel) at which he or his representative may be reached at night, weekends, and holidays. It is mandatory that the Contractor or his representative be available to the toll free telephone 24–hours per day, seven days per week, including holidays. He shall notify the Security Manager in writing of the mailing address and telephone number within three days after award of this contract and immediately thereafter in the event of change.

4. Section 00004, Paragraph 24: *Superintendence by Contractor.*
   The Contractor shall give his personal superintendence to the work or have a competent foremen or superintendent, satisfactory to the OIC [Officer In Charge], on the work at all times during progress, with authority to act for him. The Contractor Superintendent is responsible for quality control (i.e., the contractor's inspection system) as required by the *"Inspection of Services"* clause, Section 00003.

5. Section 00005, Paragraph 4(c) (as amended):
   The Contractor's Superintendent shall not hold the position of an on-duty guard.

6. Section 00005, Paragraph 4(d) (as amended):
   The Contractor shall designate a Shift Supervisor for each shift of guards. The Shift Supervisor (or Sergeant) shall inspect all posts and patrols assigned to the shift. Shift Supervisors shall not hold the position of on-duty guards except in emergencies. In emergencies, the Shift Supervisor may man the post not to exceed three hours.

7. Section 00005, Paragraph 19 (as amended):
   *Post 6 (Shift Supervisor) 1 Person (Roving Patrol–Foot and Motorized) 24–hours per day—7 days per week (Saturday, Sunday and Holidays).*

8. Section 00005, Paragraph 4(a) (as amended):
   The Contractor shall provide adequate on-site supervision of employees at all times that a post is manned. The supervisor shall ensure that each post is manned as required, that employees are properly uniformed and present a neat appearance, and that each employee is familiar with their [sic] post and duties including special orders/instructions. Such supervision shall include an informal "guardmount" at the start of each shift during which relief personnel will be assembled for inspection, arming, announcements, and a general transfer of information from one shift's personnel to the next. This is in addition to the time required for posting and relief of personnel.

9. Section 00005, Paragraph 10:
   A designated person shall be placed in charge of each shift and shall have supervision as his/her primary function during the times he/she is in charge....

signed to supervise particular aspects of the work force including guard attire, behavior, and transitions. The focus and extent of supervision was clearly different— the superintendent supervised the work force generally, while the shift supervisor supervised the particular aspects of each shift. In addition, the primary function of the shift supervisor was supervision. This contradicts the description of the superintendent whose primary duty was quality control. It would be incongruous for one individual to be responsible for two such primary functions.

The contract also required the superintendent, as liason with the government, to be available twenty-four hours a day. While the shift supervisor was to be available on a twenty-four hour basis, the contract allowed the shift supervisor to attend guard duty for up to three hours during emergencies. Due to the nature of guard duty, the shift supervisor would foreseeably be unavailable to perform duties of liason during that period of time. If the contract was interpreted as requiring one person to be employed as both shift supervisor and superintendent, one of the aforementioned provisions would have to be thrown by the wayside. The effect of plaintiff's interpretation would be to forbid one employee from assuming guard duty, while allowing that same employee to change hats and under the guise of a different title, perform guard duty. Such a reading is not practically possible and would violate the elementary rule of contract interpretation which states that all parts of a contract must be read together and harmonized if at all possible. An interpretation giving reasonable meaning to the entire contract is to be favored over one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, or superfluous. *Ceccanti*, 6 Cl.Ct. at 528. Plaintiff's interpretation of the contract renders the contract internally inconsistent. Courts have always striven to interpret provisions of a contract as coordinate, not contradictory, and contractors have long been on notice that in reading contract documents they should seek to find concord, rather than discord, if possible. *Unicon Mgmt. Corp. v. United States*, 179 Ct.Cl. 534, 573, 375 F.2d 804, 806 (1967); *Thompson Ramo Woolridge, Inc. v. United States*, 175 Ct.Cl. 527, 536, 361 F.2d 222, 228 (1966).

Plaintiff's interpretation cannot be sustained in light of the incompatibility of the duties assigned to the respective terms "shift supervisor" and "superintendent." Since the contract, as amended, expressly allowed the shift supervisor to act as an on-duty guard, but forbade the superintendent from doing so, plaintiff's interpretation was at odds with the contract's language. The contractual references to a shift supervisor and superintendent were not intended to describe different functions capable of being performed by the same person, but were intended to set out two separate job positions requiring the employment of two different individuals.

## CONCLUSION

The court thus finds that even though the contract language in dispute was not entirely clear, plaintiff's interpretation that only one individual could act as both shift supervisor and superintendent is not supported by the contract specifications. The delineation of two separately named job functions intimates that two different individuals were contemplated. The incompatibility of the responsibilities assigned to the superintendent on the one hand, and to the shift supervisor on the other, confirms this indication. The contract may not be challenged for ambiguity. For the foregoing reasons, defendant's motion for summary judgment is granted. The complaint is dismissed and the Clerk is directed to enter judgment accordingly. No costs.

IT IS SO ORDERED.