## UNICON MANAGEMENT CORPORATION
v.
### The UNITED STATES.
### No. 199-65.

United States Court of Claims.
April 14, 1967.

Joseph S. Schuchert, Jr., Pittsburgh, Pa., for plaintiff; Maurice J. Mahoney, Pittsburgh, Pa., of counsel.

Edward L. Metzler, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION AND DE-FENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

In March 1959 the contractor agreed with the Corps of Engineers to construct, for a fixed price, two phases of the Missile Master Facilities near Pittsburgh. The current claim is that the Government required plaintiff to install in one room a steel-plate flooring which was not called for by the plans and specifications. The contracting officer and the Armed Services Board of Contract Appeals (65-1 BCA para. 4775) refused the demand for an equitable adjustment and this suit was

brought. The problem arises because the most pertinent specification, if read alone, could be said to contemplate a wholly concrete rather than a partial steel-plate floor, while the most pertinent drawings, if read alone, direct the steel-plate covering. The contractor resolves the difficulty by relying, mainly, on the contractual clause that "in case of difference between drawings and specifications, the specifications shall govern." The Board and the defendant invoke another provision that "anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both." [1] Since the question is one of contract interpretation, we are free to decide the matter for ourselves.

The room was Equipment Room No. 1 (also designated as Room 117) in one of the buildings being erected by plaintiff. To secure heavy equipment, this space was to have pallets along the floor with parallel cable trenches for bringing electric current to the machines. Steel beams were to be used in and along the floor in connection with these pallets. It is agreed that the top cover of the floor, apart from the portions devoted to the pallets and the trenches, was to be a resilient floor tile. There was also to be a concrete base. The dispute is whether the tile was to be laid directly on this concrete or over a quarter-inch steel plate above the concrete. The specifications, in a section of the Technical Provisions on miscellaneous metalwork, contain a paragraph dealing with the floor of this room and with the pallets (TP 17–23). [2] By itself, this provision can be interpreted as implicitly envisioning an all-concrete floor; there is no reference to steel plate but there are references to "the concrete floor", "a concrete floor", "pouring of the floor", "pouring of the floors", and steel beams being "embedded" in the concrete floor.

The relevant drawings, by themselves, give a very different impression. The most significant sketch—a cross-section of the floor of Equipment Room No. 1— shows the trench covered by a removable steel cover plate, with a depression into which the plate's handle is fitted flush with the floor level; the open-floor portion of the drawing shows the top of two steel beams covered by $\frac{1}{4}''$ steel plate and the resilient floor tile on top of this plate. This is a specific directive to use

1. These sentences are from Article 2 of the General Provisions which reads as follows:

    "The Contractor shall keep on the work a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specificatios, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern. In any case of discrepancy either in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without this determination shall be at his own risk and expense. The Contracting Officer shall furnish from time to time such detail drawings and other information as he may consider necessary, unless otherwise provided."

2. "17–23 *Equipment Room No. 1:* AAOC Main Building. Floor shall have steel beams embedded in the concrete floor so that they run transversely to the equipment pallet lengths. The flange surfaces shall be flush with the finished cement. Two beam runs shall be used, one at each end of the pallets, as shown on the drawings. These beams will be used to anchor the equipment pallets, to level the equipment pallets and can be used as references for cement finishing tools during pouring of the floor. These beams shall be connected to the building ground system so that they will serve as a grounding means for the equipment pallets. The steel beams shall be on one continuous length, with portions removed to provide clearance for the cable troughs. The cross section area of the beams or jumpers, at the points where metal is removed shall provide at least as much conductivity as the ground cables used to connect the beams to the ground system. The grounding system must be installed prior to the pouring of the floors, as specified in Section 47, 'Electrical Work'."

steel plate immediately beneath the tile. To the same effect, another detail drawing of the trenches and beams in the room shows steel plate on top of an "I" beam and the resilient tile above the steel plate. The other drawings are uninformative or unclear on the point, but they do not contradict the sketches explicitly showing the steel plate.[3] The result is that the drawings as a whole affirmatively support the Government's understanding as to the nature of the floor of Equipment Room No. 1.[4]

■ We agree with the Board that these plans need not, and should not, be construed as in conflict with specification TP 17–23 (footnote 2, supra) but, instead, as supplementing the latter. The parties directed in the contract that "anything * * * shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both" (footnote 1, supra). This rule is peculiarly applicable here because TP 17–23 obviously does not cover the entire subject of floor construction. For instance, it does not mention the important item of resilient floor tile, or the metal plates for the trenches, nor does it even describe fully the construction of the steel beams running transversely to the pallets. When the contract is viewed as a whole, the function of the paragraph is seen as calling attention to the steel beams set in the floor to support the pallets—the references to concrete are in that connection and in that special light—not as drawing together all of the requirements on the make-up of the floor. Certainly, as the Board pointed out, the specification does not provide in terms or by necessary implication that the resilient tile is to rest directly on concrete; nothing is said about the tile or its placing. It is therefore proper to read TP 17–23 as open to complementation by the drawings (or by other specifications) insofar as these cover items or aspects other than the features of the steel beams discussed in the former provision. Plaintiff seems to insist that, if the specification *can* be read as conflicting with the drawings, that reading must be adopted even though a more harmonious interpretation is also reasonably available. The rule, however, which the courts have always preferred is, where possible, to interpret the provisions of a contract as coordinate not contradictory. See Thompson Ramo Wooldridge, Inc. v. United States, 361 F.2d 222, 228, 175 Ct.Cl. 527, 536 (1966). Contractors, too, have long been on notice that in reading contract documents they should seek to find concord, rather than discord, if they properly can.

■ This brings us to another reason why plaintiff's position is weak. There is no evidence as to the view actually taken by the company's estimators before it submitted its bid (plaintiff did not call them to the stand in the administrative proceeding). But assuming *arguendo* that they read TP 17–23 the way plaintiff now does, if they examined the plans and specifications carefully they could not have helped notice the drawings which specifically embodied the contrary requirement. If they were not aware of this fact they should have been. The contract provided that "in any case of discrepancy either in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without this determination shall be at his own risk and expense" (footnote 1, supra). A warning of this kind calls upon the bidder to bring to the Government's attention any serious or patent discrepancy of signifi-

---

3. A description of these other drawings is given in the Board's opinion.

4. Before the Board, but not in this court, plaintiff argued that one of the drawings, entitled "Typical Cover Detail Metal", shows that Room 117 has a concrete floor around the pallets and cable trenches. The Board pointed out that this sketch is typical, not of cable trench construction, but of the metal cover, and also that the place depicted was not Room 117 but Room 116. If the point were raised here we would concur with the Board.

cance, of which he is or should be cognizant. See, e. g., Beacon Constr. Co. v. United States, 161 Ct.Cl. 1, 7, 314 F.2d 501, 504 (1963); Jefferson Constr. Co. v. United States, 364 F.2d 420, 423, 176 Ct.Cl. ——, —— (July 1966), cert. denied, 386 U.S. 914, 87 S.Ct. 865, 17 L.Ed.2d 786 (1967); Southern Constr. Co. v. United States, 364 F.2d 439, 454, 176 Ct.Cl. ——, —— (July 1966). The discrepancy here—if TP 17–23 was then thought to mean what plaintiff now contends—surely met that standard of importance. Yet there is no suggestion that plaintiff brought it to the contracting officer or sought the required guidance before bidding. If, on the other hand, plaintiff did not study the plans and specifications before bidding, it cannot complain that the Board and this court strive, in accordance with the established canon, to read the relevant contract provisions together rather than at odds.

The plaintiff is not entitled to recover. Its motion for summary judgment is denied and the defendant's is granted. The petition is dismissed.