**RALPH LARSEN & SON, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 446–87C.

United States Claims Court.

May 17, 1989.

Robert N. Katz, Berkeley, Cal., for plaintiff.

Donald E. Kinner, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

MARGOLIS, Judge.

This contract case is before the court on defendant's motion for summary judgment. The plaintiff asserts that contract specifications concerning the installation of conduit at the Mail Bag Depository of the United States Postal Service Center in Richmond, California, were ambiguous, and that genu-

ine material factual issues are in dispute precluding summary judgment. After careful consideration of the entire record, and after hearing oral argument, the court has determined that the contract specifications in question are not ambiguous, and that the government's requirement that wrapped rigid steel conduit be installed at the site was not a change entitling the plaintiff to an equitable adjustment. The court has also determined that there are no genuine material factual issues in dispute and that the defendant is entitled to judgment as a matter of law. Accordingly, the defendant's motion for summary judgment is granted.

## FACTS

On July 7, 1986, the Facilities Service Center of the United States Postal Service (USPS) in San Bruno, California issued Invitation For Bids (IFB) No. 059984–86–A–0085. The IFB was for the expansion of the Mail Bag Depository in Richmond, California. Opening of bids was scheduled for August 7, 1986; however, on August 5, 1986, three amendments to the IFB were issued. Consequently, the opening of bids was rescheduled for August 18, 1986. When the bids were opened, Ralph Larsen and Son, Inc. (Larsen) was determined to be the lowest bidder. On September 9, 1986, the USPS awarded the contract to Larsen. By September 26, 1986, the USPS had received performance and payment bonds for Larsen as required by the contract, and on that date issued Larsen a notice to proceed.

Once Larsen commenced performance on the contract, Triple S Electrical Company (Triple S), Larsen's subcontractor responsible for the electrical construction, indicated its intention to use Schedule 40 PVC plastic conduit on the project. In a letter dated September 29, 1986, Larsen's Project Superintendent, Darrel Tucker, directed Triple S "to install rigid steel conduit and protective coating system as specified in the Contract Documents." Tucker cited item 6 of the amendment to the contract, which states:

B. Page 16111–3, Subsection 3.01: Add the following paragraph:

"H. Electrical metallic tubing will not be installed below grade, where subject to severe corrosive conditions, or embedded in concrete. Only rigid steel conduit may be used where exposed to damage, or where exposed five feet or less above floors. Rigid steel conduit not larger than 1¼-inch and 2–inch may be installed on the centerline of 5–inch and 8–inch concrete slabs on grade, respectively. Conduit embedded in a structural slab shall comply with applicable provisions of the American Concrete Institute (ACI) Standard 318. Where conduit is run below slabs-on-grade, conduit will be rigid steel and shall be field-wrapped with 0.010–inch thick pipe-wrapping plastic tape applied with a 50–percent overlay, or shall have a factory-applied plastic resin, epoxy, or coal-tar coating system. Zinc coating may be omitted from rigid steel conduit, or from IMC which has a factory-applied epoxy system."

and section 03100, paragraph 3.05–D2, which states:

D. Conduits:

\*  \*  \*  \*  \*  \*

2. Run electrical and telephone conduits in concrete only with written authority by the Contracting Officer. If allowed, conduits to be ¾" diameter maximum.

\*  \*  \*  \*  \*  \*

On October 8, 1986, Larsen's Quality Control Representative, Ivory Jones, submitted a letter to Keller and Gannon (K & G), the architectural and engineering firm responsible for review of the materials to be used on the project. The letter requested K & G's approval of the proposed list of materials to be used on the project, indicating that Larsen's electrical subcontractor wanted to use Schedule 40 PVC conduit "[b]elow slabs and bottom 1/3rd of concrete slabs." The letter requested that the list be reviewed for compliance with amendment 6(B) to paragraph 3.01.

Larsen's October 8th letter was returned by K & G with markings indicating K & G's disapproval for the use of Schedule 40 PVC conduit below and in the bottom 1/3 of the slabs. Larsen's subcontractor, Triple S, believed that K & G's interpretation of the specification restriction against Schedule 40 PVC conduit was in error, and requested clarification. Because of the substantial difference in cost between the plastic PVC conduit and the wrapped rigid steel conduit, Larsen forwarded Triple S's concerns to K & G. Larsen noted, however, that it had ordered Triple S to use the wrapped rigid steel conduit. On November 13, 1986, Larsen sent Triple S a letter acknowledging that a large quantity of PVC conduit had been delivered to the site and that Triple S apparently intended to install the material despite Larsen's direction to the contrary. Following a meeting that day with the architect and the USPS representative, Larsen stated in its letter that Larsen and USPS were emphatic that the PVC conduit would not be acceptable and instructed Triple S to install the specified conduit without further delay.

At the request of Triple S, a meeting was held on November 20, 1986, to discuss Triple S's proposed use of the Schedule 40 PVC conduit. Present at the meeting were representatives of Triple S, Larsen, K & G, and the USPS. At the meeting, Triple S indicated that it interpreted the specifications to mean that if the conduit is in the slab, but not at the centerline, the conduit does not have to be of rigid steel. Moreover, Triple S considered the gravel drainage base for the slab as part of the "slab-on-grade." Therefore, Triple S reasoned, if the conduit is installed in the gravel base, it does not have to be of rigid steel. In response, representatives of the USPS pointed out that the specifications and drawings established that the slab-on-grade did not include the gravel drainage base. Furthermore, they added, any conduit embedded in the concrete would have to be first approved by the contracting officer.

Triple S began installing wrapped rigid steel conduit in November 1986. On November 28, 1986, Triple S submitted a claim to Larsen for $42,583.18 based upon the direction to use wrapped rigid conduit as opposed to the Schedule 40 PVC conduit Triple S believed it was permitted to use. On December 11, 1986, Larsen forwarded Triple S's claim, as its claim, to the USPS. On January 28, 1987, the contracting officer denied Larsen's claim.

Plaintiff, on behalf of Triple S, the real party in interest, asserts that the contract language is ambiguous and that material factual issues exist warranting a trial. Plaintiff also contends that pouring concrete over conduit placed in or on top of the gravel drainage base constitutes "embedding" conduit in the slab, and that Triple S was entitled to use Schedule 40 PVC conduit for such embedding. Defendant argues that the contract is unambiguous in requiring wrapped rigid steel conduit and that Triple S's installation method was *below* slab-on-grade, which unequivocally required the use of wrapped rigid steel conduit. The defendant also alleges that no material factual issues exist precluding summary judgment.

## DISCUSSION

### A. Summary Judgment Standards

The defendant filed a motion for summary judgment under Rule 56 of the United States Claims Court. RUSCC 56. Plaintiff opposes the motion claiming that there are genuine issues of material fact that preclude summary judgment. The summary judgment procedure was designed "to secure the just, speedy and inexpensive determination of every action." Rule 1(a), RUSCC. *See Sweats Fashion, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1562 (Fed.Cir.1987). Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987).

In considering a party's motion for summary judgment, the court must first determine whether the undisputed facts present-

ed by the movant entitle that party to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511. The court's inquiry should next proceed to a consideration of the opposing party's showing to determine whether it has set forth facts tending to show that a genuine material factual issue exists requiring a trial. It may be necessary to isolate those issues that are factual issues from those that are issues of law. Issues of law will not preclude summary judgment. Of the remaining alleged factual issues, the court must determine whether these issues are material, *i.e.*, whether a decision on the alleged factual issue is essential to a decision on the motion. Finally, the opposing party must support its factual contentions with affidavits, or otherwise submit proof establishing that the alleged factual issue is genuine. Rule 56(f), RUSCC.

The gravamen of the plaintiff's complaint presents primarily questions of contract interpretation. It is necessary, therefore, in considering the defendant's motion, to clarify the legal framework within which the court must determine the existence of any genuine material factual issues in dispute.

### 1. *Contract Interpretation*

■ The legal question before the court is what reasonable interpretation can be given to the language of the contract specifications identifying the type of conduit to be used. The plaintiff alleges that the contract specifications regarding conduit use are ambiguous. Contractual provisions may be said to be ambiguous if at least two reasonable interpretations may be drawn from them. *Salem Engineering & Construction Corporation v. United States*, 2 Cl. Ct. 803, 806 (1983). A contractor asserting an alternate interpretation must show that its interpretation falls within the "zone of reasonableness." *WPC Enterprises, Inc. v. United States*, 163 Ct.Cl. 1, 6, 323 F.2d 874, 876 (1963). The court should not consider extrinsic evidence to change the terms of a contract that is clear on its face. *Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1183 (Fed.Cir.1988). Although the court has yet to examine the perfectly drafted contract, it is clear, considering the specifications within the contract as a whole, that the requirements for conduit installation set forth are not ambiguous.

■ Paragraph 6B of amendment 3 of the IFB, which substituted a new section 16111, paragraph 3.01(H) in the specification, clearly contemplates two distinct methods of installing conduit in relation to slab-on-grade. First, the conduit could be *embedded into* the slab-on-grade with certain size restrictions and in accordance with the American Concrete Institute's (ACI) Standard 318. Second, section 16111, paragraph 3.01(H), provides that the conduit may be installed *below* the slab-on-grade and specifies that wrapped rigid steel conduit must be used. Amendment 3 to the IFB modified the specifications to specifically identify the type of conduit that was to be installed below the slab-on-grade. Amendment 3 stated that "[w]here conduit is run below slabs-on-grade, conduit will be rigid steel and shall be field-wrapped with 0.010–inch thick pipe-wrapping plastic tape applied with 50–percent overlay, or shall have a factory-applied plastic resin, …"

■ The actual method used by Triple S to install the conduit is not in dispute. Stephen S. Slausen, the owner of Triple S, testified at his deposition that he placed all of the conduit on top of the gravel drainage base prior to the construction of the concrete slab floor. Deposition of Stephen Slausen, pp. 68–69. The concrete slab-on-grade was then poured over the gravel drainage base and the conduit, which was then resting on the gravel. Triple S contends that this method of installation can be interpreted as "embedding" as specified in the contract, because when cement is poured over the conduit, some cement might tend to seep down into the gravel drainage base. Triple S also alleges that the gravel drainage base should be considered part of the "slab-on-grade." Because the government required Triple S to use wrapped rigid steel conduit, instead of plastic Schedule 40 PVC conduit, Triple S asserts that it is entitled to an equitable

adjustment for a government imposed change.

Numerous circumstances indicate that this is not a reasonable interpretation of the contract. The plain meaning of the term "embedded" as used in paragraph 3.01(H) does not support plaintiff's interpretation. As this court stated in *Aluminum Company of America v. United States*, 2 Cl. Ct. 771 (1983), "[w]here the provisions of a contract are phrased in clear and unambiguous language, 'the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties....'" *Id.* at 776 (citing *Elden v. United States*, 223 Ct.Cl. 239, 252, 617 F.2d 254, 260–61 (1980)). The dictionary defines "embed" to mean "to fix firmly in a surrounding mass." *American Heritage Dictionary*, 425 (Houghton, Mifflin Co. 2d ed. 1970). This definition is consistent with the understanding of the term derived from reviewing the contract specifications, especially because the contract specifically distinguishes between embedded conduit and conduit placed below slab-on-grade.

The conclusion that the method of installation used by Triple S was *below* slab-on-grade and that the gravel drainage base is separate from slab-on-grade is supported by the contract documents. The soils report in the contract states "... slab-on-grade building floors should be *underlain* by at least 4 inches of clean, free-draining gravel." The contract drawings identify the six-inch concrete slab-on-grade to be separate from and placed over the four-inch gravel drainage base. The suggestion that a "slab" includes gravel placed beneath the slab for drainage is not reasonable. Nothing in the contract plans or specifications supports the contention that the gravel drainage base should be considered part of the slab-on-grade.

In addition, Darrel Tucker, Larsen's Superintendent, stated that the slab-on-grade was *separate* from the gravel drainage base. The project engineer stated that the gravel drainage base was placed *below* the concrete slab-on-grade. The construction definition of slab-on-grade is "[a] non-suspended, ground-supported concrete slab." *Construction Dictionary*, 480 (Phoenix 1978). The understanding that the installation method was below slab-on-grade was also held by Larsen, the prime contractor, who directed Triple S to install wrapped rigid steel conduit for the portions of the specifications in question. These circumstances clearly indicate that the only reasonable interpretation of the contract specifications is that conduit placed in or on top of drainage gravel with cement poured over is not embedded conduit, but rather *below* slab-on-grade.

Moreover, even if one could conclude that the installation method constituted embedding conduit, according to the contract specifications in paragraph 3.01(H), such conduits must be installed in accordance with ACI Standard 318. Paragraph H states that "[c]onduit embedded in a structural slab shall comply with the applicable provisions of the American Concrete Institute (ACI) Standard 318." ACI Standard 318, section 6.3.1 states that "[c]onduits ... may be embedded in concrete *with the approval of the Engineer, ...*" (Emphasis added.) Thus, the contract unambiguously requires that embedded conduits be approved by the project engineer. Triple S never specifically sought the project engineer's approval for its use of plastic conduit. The government and the prime contractor Larsen repeatedly and unequivocally refused to allow Triple S to install Schedule 40 PVC.

The one provision of the contract specifications that could be arguably construed as ambiguous is the portion of paragraph 3.01(H) which states that "[r]igid steel conduit not larger than 1¼–inch and 2–inch may be installed on the centerline of 5–inch and 8–inch concrete slabs on grade, respectively." In the claim submitted to the contracting officer, Triple S argued that this specification was defective as it related to the government's position that wrapped rigid steel conduit had to be used because it seems to restrict the requirement for use of wrapped rigid steel to certain size slabs. However, Triple S also

acknowledged that no 5–inch or 8–inch slabs were being installed at this particular job site. Slausen stated in his deposition that he ignored this portion of the specification. The provision is, therefore, not relevant to determining whether the actual specifications at issue required wrapped rigid steel conduit for the work for which Triple S seeks to recover. Moreover, it is axiomatic in contract interpretation that the court should read the contract as a whole and construe provisions harmoniously where it is reasonable to do so. *See Unicon Management Corporation v. United States*, 179 Ct.Cl. 534, 537, 375 F.2d 804, 806 (1967) Accordingly, this provision does not render the specifications ambiguous.

■ Triple S's claim is based entirely upon its own unilateral misinterpretation of the contract specifications. It is clear that Triple S's view that Schedule 40 PVC could be installed at the Mail Bag Depository was at no time shared by the prime contractor Larsen, or the government. The court has determined that the contract was not ambiguous, but rather, clearly indicated that wrapped rigid steel conduit had to be used for below slab-on-grade installation. Even if the court accepted Triple S's view that the method it used to install the conduits was embedding, Triple S was clearly required under ACI Standard 318 to obtain engineer approval. Such approval was never specifically sought. A unilateral mistake such as this does not provide the basis for an equitable adjustment. *Technology Chemical, Inc.*, ASBCA No. 26304, 82–2 BCA ¶ 15927, 78,928, 78,929 (1982) (denying contractor's claim where, through subcontractor's unilateral misreading of specifications, subcontractor deliberately chose to use a cheaper nonconforming material). Triple S was required to install wrapped rigid steel conduit and nothing else.

■ Based on these unambiguous contract specifications, the court has determined that the requirement that Triple S install wrapped rigid steel conduit did not constitute a change in contractual obligations. Conduit laid on top of drainage gravel, even with the cement poured over it, is clearly below slab-on-grade installation as contemplated by the contract. The court has concluded that the undisputed facts concerning the actual installation method employed, given this interpretation of the specifications, entitles the defendant to judgment as a matter of law. The court's inquiry must now turn to consider whether the plaintiff has shown that any genuine material factual issues exist that will preclude summary judgment for the defendant.

### 2. Plaintiff's Alleged "Factual" Issues

In its opposition to the defendant's motion for summary judgment, the plaintiff specifies nine issues in dispute that it alleges should defeat defendant's motion. These issues include:

1. Whether Triple S's interpretation of the contract is reasonable.
2. Whether provisions of the contract were ambiguous.
3. In light of the custom of the industry, what was a reasonable interpretation of the contract?
4. Whether the terms of the contract conflicted such that portions rendered key provisions in conflict with each other.
5. What, in fact, did the specifications require?
6. Did defendant know of plaintiff's interpretation of the contract when the materials list was approved?
7. How were the conduits placed?
8. What actually constitutes a slab on grade and does it include the gravel base?
9. What constitutes embedding or encasing conduit?

Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 1–2.

■ Plaintiff's contention that these issues preclude summary judgment demonstrates a fundamental misperception of the requirements of Rule 56. The issues plaintiff has identified at numbers 1 through 5 are not issues of *fact*. These are all *legal* issues relating to interpretation of the con-

tract. Questions of contract interpretation are issues of law and may be disposed of by summary judgment. *Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 812 & n. 1 (Fed.Cir.1988); *P.J. Maffei Building & Wrecking Corporation v. United States*, 732 F.2d 913, 916 (Fed. Cir.1984). It is solely the function of the court to decide legal issues. No fact finding mission is required to determine what a reasonable interpretation of the contract was, or whether the contract was ambiguous, or whether terms of the contract are in conflict, or what the obligations arising from the contract are. All are questions of law, and no trial is necessary to decide them. Plaintiff's allegation, made at the hearing, that expert testimony is required to interpret the specifications is without merit. To accept such an assertion would result in the untenable situation of requiring that every disputed contract be interpreted with expert testimony. Contracts, such as the one at issue here, are not beyond the ability of courts to accurately interpret.

■■■■■ At the hearing, the plaintiff argued that findings of fact were necessary to determine industry custom for the installation of conduit, which is also identified as an issue of fact in plaintiff's issue 3. Evidence of custom and trade usage may be considered even though the language in a contract is unambiguous. *Gholson, Byars & Holmes Construction Co. v. United States*, 173 Ct.Cl. 374, 395, 351 F.2d 987, 999 (1965) (stating that "the language of a contract is to be given effect according to its trade meaning notwithstanding that in its ordinary meaning it is unambiguous."). Plaintiff's argument fails to recognize, however, that the government may require performance both in excess of, or below, the standard normally accepted in a trade. In *S.S. Silberblatt, Inc. v. United States*, 193 Ct.Cl. 269, 288, 433 F.2d 1314, 1323 (1970), the Court of Claims stated "[t]rade practice in the building industry cannot override an unambiguous contract provision." Given the court's conclusion here that the specifications clearly and unambiguously required installation of wrapped rigid steel conduit, building industry custom is

not relevant and does not present a material factual issue precluding summary judgment.

■■■ Issue 6 *is* a factual issue. However, in light of the court's determination that the specifications relating to the installation of conduits are unambiguous, it is immaterial. Issue 6 essentially urges that if the defendant knew of the plaintiff's erroneous interpretation of the contract when it approved the plaintiff's material list, the defendant agreed by implication to allow the use of plastic conduit. Triple S contends that it was given approval for using PVC conduit because its material list, which included PVC conduit, was accepted. This acceptance, Triple S contends, was tantamount to approval of the *use* of such conduit under ACI Standard 318.

The court is not persuaded that acceptance of the material list was an implied blanket approval for use of PVC conduit in or below the slabs-on-grade. Clearly, in light of the continued and unequivocal denial by both the government and the prime contractor Larsen, that Triple S could install Schedule 40 PVC, a more explicit engineer approval was required for the substitution of material. In addition, the resident engineer stated that PVC conduit could have had other applications in this project. Accordingly, the defendant's knowledge at the time it accepted the material list, while indeed a factual issue, is not a *material* factual issue. Given the court's interpretation that the specifications are unambiguous, this issue is irrelevant.

■■■ In addition, as the defendant argues, the government's knowledge would only be a relevant issue if the government was on notice of Triple S's misinterpretation. *See BCM Corporation v. United States*, 2 Cl.Ct. 602, 608 (1983). It is obvious from the record that neither the government nor the prime contractor was aware of Triple S's interpretation until the project had begun. Triple S had an obligation to seek clarification of the specifications if it did not understand the contract requirements. By failing to seek clarification, a contractor forfeits the opportunity

to rely on its unilateral, uninformed interpretation and bears the risks of misinterpretation. *MWK International, Ltd., Inc. v. United States*, 2 Cl.Ct. 206, 209–10 (1983). Triple S did not seek clarification. Accordingly, the government's knowledge of Triple S's misinterpretation is not material.

Issue 7 is also a factual issue. It is not, however, as the defendant observes, in dispute. Triple S's Slausen testified that the conduit was physically placed in or on top of the gravel base. Concrete was then poured over the gravel base to form the slabs-on-grade. Although there is a dispute concerning the interpretation of these facts and the ultimate conclusion to be drawn from them, *i.e.*, whether or not this process of installation amounted to "embedding" the conduit, the facts surrounding the installation are not in dispute. A dispute concerning the ultimate and decisive conclusion drawn from undisputed facts does not prevent summary judgment, when that conclusion is one to be drawn by the court. *See Fox v. Johnson & Wimsatt, Inc.*, 127 F.2d 729, 736–37 (D.C.Cir.1942).

Finally, issues 8 and 9 are mixed issues of fact and law. To the extent these issues identify a need to determine what constitutes "slab-on-grade" or "embedding," they could be considered issues of fact because additional factual information could be acquired for their resolution. However, these are more properly considered issues of law, because their relevance is only apparent within the context of interpreting the contract. These issues require definition of contractual terms, and are, hence, questions of contract interpretation. As previously noted, the term "slab-on-grade" is given meaning by the contract itself and when read within the entirety of the contract leads to the unambiguous conclusion that it does not include gravel placed below slabs for drainage.

The definition of "embedding" is also a question of contract interpretation and likewise can be resolved without a trial. As previously stated, the plain meaning of the term "embed" is sufficient to resolve this question. The court has determined that the installation method employed by Triple S was below slab-on-grade as contemplated in the contract. Moreover, because the plaintiff was unambiguously required by the contract to obtain approval from the engineer under ACI Standard 318 before installing "embedded" conduit, and plaintiff never actually sought and explicitly received such approval, the definition of the term "embedding" is also immaterial.

## CONCLUSION

The court has determined that there are no genuine issues of material fact in dispute and that the defendant is entitled to judgment as a matter of law. The contract specifications concerning the installation of conduit unambiguously require the installation of wrapped rigid steel conduit unless an alternate material is specifically approved for installation by the project engineer. The plaintiff has failed to establish that there are any genuine material factual issues in dispute requiring a trial. Accordingly, the defendant's motion for summary judgment is granted. The Clerk will dismiss the complaint. Each party will bear its own costs.