**BLINDERMAN CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 305–88C.

United States Claims Court.

Sept. 8, 1989.

David I. Abse, Warrenton, Va., for plaintiff.

Donald E. Kinner, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. Jennifer M. Payton, Asst. Dist. Counsel, Army Corps of Engineers, Louisville, Ky., of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment.

### FACTS

The following facts are the only ones material to the resolution of the cross-motions and are undisputed. On September 23, 1983, contract DACA 27–83–C–0100 was executed between the Army Corps of Engineers (the "Corps") and Blinderman Construction Company, Inc. ("plaintiff"), in the amount of $8,143,655.00 for the construction of unaccompanied enlisted personnel housing at Chanute Air Force Base in Rantoul, Illinois.

In the specifications for the contract, Technical Provision 15K "Ventilating System," paragraph 1 "Applicable Publications" states that "[t]he publications listed below form a part of this specification to the extent referenced...." Listed in paragraph 1.6 of the solicitation under "Applicable Publications" is National Fire Protec-

tion Association ("NFPA") Code No. 90A (1981 ed.) "Standard for the Installation of Air Conditioning and Ventilation Systems." Paragraph 3–3.2.1 of this code provision reads: "Approved fire dampers shall be provided where ducts or air grills penetrate partitions required to have a fire resistance rating of 2 hours or more. (See Figure 3–3.)" Paragraph 3–3.7.2.1 of the code provision states:

> The designer of an air duct system shall show on the drawings the location and mounting arrangement of all automatic fire door assemblies, *fire dampers,* smoke dampers, ceiling dampers, and fire protection means of similar nature *required by this standard.*

(Emphasis added.)

Technical Provision 15–K, paragraph 8.4, provided in full:

> Fire Doors and Fire Dampers: Fire dampers or doors shall conform to UL 10 and UL 555, respectively. *Fire dampers or doors shall be provided where indicated in ducts passing through fire rated partitions or walls.* Fire doors and fire dampers shall be automatic operating type approved for the protection of openings in fire rated walls and partitions and shall be installed in accordance with the conditions of their approval and the manufacturer's instructions. Hinged or unhinged access doors shall be provided in the ducts to make all fire doors and fire dampers accessible for inspection and maintenance, and shall be as specified for duct access doors. Ductwork in fire-rated floor-ceiling or roof-ceiling assembly system with air ducts that pierce the ceiling of the assembly shall be constructed in conformance with designs in UL Fire Resistance Directory. Other designs that have been tested by an independent, nationally recognized testing organization and comply with the requirements set forth in NFPA No. 90A are acceptable. Unless otherwise indicated, *the installation details given in NFPA No. 91 for fire doors and in SMACNA Fire Damper Guide for Air Handling Systems for fire dampers shall be followed,* except minimum metal thickness

for all sleeves provided for fire dampers shall be not lighter than 14–gage (0.0781 inch). Necessary items associated with the fire doors and fire dampers such as retaining angles, sleeves, and breakaway connections shall be provided.

(Emphasis added.) This specification was amended on July 15, 1983, after the invitation for bids had been released to bidders, but before bid opening. Amendment No. 0001 deleted the words "where indicated." The specification as revised read: "Fire dampers or doors shall be provided in ducts passing through fire partitions or walls...." Amendment No. 0001 also added a note on the Contract Drawing Sheet Nos. 128, 129, 131, 132, 133, and 134, stating that "[f]ire dampers or doors shall be provided in all ducts passing through fire rated partitions or walls. See sheet 53 & 54 for wall fire ratings." The Contract Drawing Sheet Nos. 53 and 54 depict the locations of both one-hour and two-hour fire-rated partitions.

In the General Provisions of the contract, clause 2 "Specifications and Drawings" provides, in pertinent part:

> Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern. In case of discrepancy either in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing....

On July 18, 1984, the Corps inspector informed plaintiff that "fire dampers are required in all ducts at fire walls...."

On October 11, 1984, plaintiff's mechanical subcontractor, R.H. Bishop Company, wrote plaintiff stating that NFPA–90A, at paragraph 3–3.2.1, provides that fire dampers are required in only two-hour fire rated partitions. The letter concluded with the contention that, "if the Owner wishes Fire Dampers in locations other than those required by NFPA–90A, ... [Bishop] should receive payment for the additional Fire Dampers."

By Transmittal 152, dated October 19, 1984, plaintiff submitted the manufacturer's shop drawings for ductwork. This transmittal was disapproved on November 6, 1984, in part because "fire dampers are not shown where the ducts pass [through] corridor walls."

By letter dated January 15, 1985, to plaintiff, Bishop requested compensation in the amount of $9,235.77 for 145 fire dampers for the one-hour fire rated partitions that Bishop did not consider itself required to furnish. On May 7, 1985, plaintiff, based on its view that those dampers were not required because of a conflict between the note added to the 120– and 130–series contract drawings and the drawings depicting the fire-rated partitions, submitted a proposal to the Corps in the amount of $12,925.00 for the 145 dampers. The Corps responded to plaintiff's proposal by letter dated July 17, 1985, stating:

> The note on Contract Drawing No. 128 requires fire dampers in ducts passing through the fire rated partitions shown on Contract Drawings No. 53 and 54. These drawings indicate locations of the one hour and two hour fire rated partitions. Therefore, it is considered a contract requirement to provide fire dampers where ducts pass through the one hour rated corridor partitions.

By letter dated February 6, 1987, plaintiff filed a request for a contracting officer's decision on its proposal. The contracting officer denied plaintiff's claim on May 19, 1987.

## DISCUSSION

The recital of undisputed material facts follows the Supreme Court's instruction in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510 (emphasis in original). Plaintiff con-

troverts the averments of one of defendant's affiants, for example, but this affidavit does not serve as a basis for granting defendant's cross-motion.

Plaintiff and defendant agree that the NFPA standards apply to this contract, but disagree as to the effect of incorporating the standards into the contract specifications. Plaintiff contends that the standards, as a part of the specifications, require fire dampers only for partitions with a fire resistance of two hours or more and further mandate that fire dampers be shown on the contract drawings. Defendant asserts that NFPA standards were a part of the contract only to the extent referenced. Defendant argues the NFPA standards were not referenced with respect to the location of fire dampers and, thus, do not control as to where fire dampers were to be placed or the manner in which the Corps must have requested fire dampers on the contract drawings. Plaintiff also contends that the amended specification, coupled with the added note on the drawings, failed to convey with sufficient clarity that the contractor must install fire dampers in all ducts passing through fire-rated walls.

The court's first responsibility in construing disputed contractual provisions "is to ascertain analytically whether *vel non* an ambiguity existed." *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456 (1985) (quoting *Enrico Roman, Inc. v. United States,* 2 Cl.Ct. 104, 106 (1983)), *aff'd mem.,* 785 F.2d 325 (Fed.Cir.1985); *see also Monarch Painting Corp. v. United States,* 16 Cl.Ct. 280, 286 (1989). Interpretation of the contract, including the specifications and drawings, is a matter to be resolved by the court. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). An interpretation that gives a reasonable meaning to all parts of a contract will be preferred to one that leaves portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983)). A contract is ambiguous if it is susceptible of two different interpretations, each of which is found to be consistent with the contract's language. *Sun Shipbuilding & Dry Dock Co. v. United States,* 183 Ct.Cl. 358, 372, 393 F.2d 807, 815–16 (1968).

■ The contract specifications provided that NFPA Standard No. 90A was a part of the contract specifications to the extent referenced. NFPA 90A was referenced in Technical Provision 15K, paragraph 8.4, which specified that designs other than those in the Underwriters Laboratories, Inc. ("UL"), Fire Resistance Directory, but "have been tested by an independent, nationally recognized testing organization and comply with the requirements set forth in NFPA No. 90A are acceptable."

Defendant is correct in asserting that this language does not refer to the location of fire dampers. Technical Provision 15K, paragraph 8.4 discussed separately how fire dampers were to conform to the UL Fire Resistance Directory and where fire dampers were to be located. The contract therefore considered the design of the fire dampers to be different than their location. Since NFPA 90A was referenced only with respect to design, NFPA 90A could not have been incorporated into the contract with respect to the location of fire dampers.

■ Because NFPA 90A was not referenced with respect to the location of fire dampers, other language in the contract must be examined to determine if the contract required fire dampers be provided for the 145 partitions with a fire resistance of one hour. The amendment to the IFB, after it had been released to bidders, included changes regarding the placement of fire dampers. The amendment to Technical Provision 15K, paragraph 8.4 removed the limitation that dampers must be indicated in order to be a requirement of the contract. In addition to this change, the amendment added a note to several of the drawing sheets indicating "fire dampers or doors are to be provided in all ducts passing through fire rated partitions or walls." The note directed the bidder to "[s]ee sheet 53 and 54 for wall fire ratings." These sheets depicted the location of the one-hour

fire-rated partitions. Plaintiff argues that the locations on sheets 53 and 54 did not require fire dampers.

The changes to the contract expressed the Corps' intention that fire dampers be provided for all fire partitions and walls that were noted on sheets 53 and 54 of the drawings. Consequently, there was no ambiguity in the contract, and plaintiff was required to provide fire dampers for the 145 partitions with a fire resistance of one hour.

■ Assuming, *arguendo*, that plaintiff was correct in interpreting as part of the specifications the NFPA 90A requirement that fire dampers be provided for partitions with a fire resistance rating of two hours or more and that the location and mounting arrangement of fire dampers should be shown on the drawings, the issue becomes whether the amendment created an ambiguity as to where fire dampers were to be located.

The amendment to the drawings made explicit the Corps' intention that fire dampers were required for the 145 partitions with a fire resistance of one hour. The word "all" in the amendment note to the drawings reasonably could not be construed to apply to some of the fire partitions and walls shown on the drawings. " 'All' means all and not substantially all...." *National Steel & Shipbuilding Co. v. United States*, 190 Ct.Cl. 247, 267, 419 F.2d 863, 875 (1969) (footnote omitted). In these circumstances plaintiff should have noted the difference between plaintiff's understanding that NFPA 90A only required the contractor provide fire dampers for partitions with a fire resistance rating of two or more hours and the amendment's requirement that fire dampers be provided for the one-hour partitions indicated on drawing sheets 53 and 54, particularly since the amendment was an addition to the invitation for bids.

NFPA 90A and the amendment to the contract do not conflict. NFPA 90A established the minimum standard for fire dampers. The amendment noted the Corps' requirement that the contractor provide more than just the minimum standard.

This interpretation of the contract gives meaning both to the NFPA 90A requirements and the amendment to the contract. If the contract were interpreted in the manner that plaintiff suggests and the contractor was to provide fire dampers only as required by NFPA 90A, the changes made by the amendment would have no meaning. Such a reading would be improper, since contracts are to be interpreted, where possible, so as to give meaning to all provisions. *Fortec Constructors*, 760 F.2d at 1292. Established court precedent and rules of construction require that contract provisions should not be interpreted as conflicting with another unless there is no other reasonable construction of the language possible. *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965). Plaintiff's interpretation of the contractual provisions does not qualify as reasonable, thereby negating the existence of the ambiguity for which plaintiff contends.

■ Plaintiff argues that interpreting the amendment to mean that the 145 one-hour fire rated partitions require fire dampers creates a discrepancy between the drawings notes and specifications. Plaintiff cites clause 2 of the contract's General Provisions in arguing that the wording of the specifications controls over any conflict with the drawings. From this plaintiff reasons that NFPA 90A governs over the amendment changes because NFPA 90A is a specification, whereas the amendment changes are drawings notes. First, it should be observed that the specifications, as well as the drawings, were amended. Second, the language of clause 2 does not support plaintiff's construction of the meaning of the clause. The clause, quoted *supra* at p. 862, both cross-references things mentioned in either the contact specifications or drawings and establishes the priority of the specifications over drawings. It also provides: "In case of discrepancy either in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing...."

In *Unicon Management Corp. v. United States,* 179 Ct.Cl. 534, 375 F.2d 804 (1967), this contract provision was construed as "[a] warning ... [that discrepancies are to be submitted to the Contracting Officer] calls upon the bidder to bring to the Government's attention any serious or patent discrepancy of significance, of which he is or should be cognizant." 179 Ct.Cl. at 538, 375 F.2d at 806–07 (citations omitted). Thus, if there was a discrepancy between NFPA 90A and the amendment, as plaintiff contends, plaintiff had a duty to bring the discrepancy to the contracting officer's attention, since any discrepancy between only providing fire dampers for fire partitions with a resistance of two or more hours and providing fire dampers for all partitions was obvious and significantly affected the work the contractor was required to do.

Plaintiff claims that the Corps did not clearly indicate that fire dampers were required for the 145 one-hour fire rated partitions. It argues that since NFPA 90A required the location and mounting arrangement of fire dampers to be shown on the drawings and since fire dampers for partitions with a fire resistance of one hour—other than the 145 in question—were indicated, the drawings did not direct the installation of the additional dampers. However, the amendment to these same drawings did note that "[f]ire dampers or doors shall be provided in all ducts passing through fire rated partitions or walls. *See* sheet 53 & 54 for wall fire ratings."

*J.W. Bateson Co., Inc.,* 68–1 B.C.A. (CCH) ¶ 7,043 (board reconsideration of 68–1 B.C.A. (CCH) ¶ 6,973), cited by plaintiff for the proposition that deviation from an industry standard must be clear, is inapposite. In *Bateson* the board emphasized two key facts that do not appear in this case. First, the prime contractor and its subcontractor had considered the disputed specification, deciding after "careful study" that the contract plans did not require levels of work beyond the industry standard. 68–1 B.C.A. (CCH) ¶ 6,973, at 32,230. Further, the contractor declared in a transmittal letter accompanying its bid that it read the contract specification as requiring only the industry's recommended practice. *Id.* Had plaintiff in the case at bar engaged in a similar study of the contract language, its obligations under the contract would have been clear. If plaintiff had submitted its interpretation as to number, location, and mounting of fire dampers in a transmittal letter, this controversy between the parties may have been avoided.

If there were an ambiguity as to the number of dampers, the issue becomes whether the provisions at issue were patently ambiguous at the time of contracting. If they were, then a duty arises on the nondrafting party to inquire as to their meaning. *Fort Vancouver Plywood Co. v. United States,* 860 F.2d 409, 414 (Fed.Cir. 1988) (citing *United States v. Turner Constr. Co.,* 819 F.2d 283 (Fed.Cir.1987)).

There is a clear discrepancy between the requirement of providing fire dampers if their location is shown on the drawings or if they are for partitions with a fire resistance of two or more hours, and providing them for all partitions indicated on drawing sheets 53 and 54. Thus, it was plaintiff's responsibility to inquire about such an ambiguity. Plaintiff's interpretation that it need only follow NFPA 90A standards was not reasonable because it would have made pointless the amendment note to the contract drawings.

## CONCLUSION

Based on the foregoing, defendant's cross-motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. The Clerk of the court shall dismiss the amended complaint.

No costs.