**CENTEX CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–159C.**

United States Court of Federal Claims.

July 13, 2001.

Gina M. Vitiello and Seth Price, Atlanta, Georgia, for plaintiff.

Erin E. Powell, Civil Division, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General David W. Ogden, for defendant.

OPINION

ALLEGRA, Judge.

The basic issue in this case is whether the contract in question, to construct an addition to a Veteran's Administration medical facility, required the installation of channel bracing in stud walls with door openings. If it did not, then plaintiff is entitled to additional compensation for ultimately having to install those braces; if the contract did so provide,

then plaintiff is entitled to no compensation. After careful consideration of the briefs filed and the oral argument, and for the reasons discussed below, the court concludes that the contract required the channel bracing and, therefore, **GRANTS** defendant's motion for summary judgment.

## I. Statement of Facts

On or about September 30, 1993, the Department of Veterans Affairs ("VA") entered into Contract No. V101DC0086 with Centex Construction Company, Inc. ("Centex" or "plaintiff") to construct a clinical addition and Spinal Chord Injury Center ("SCI Center") at the VA Medical Center in Dallas, Texas. Section 1.45 of this contract, entitled "SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FAR 52.236–21) (APR 1984)," contained a standard Federal Acquisition Regulation (FAR) clause, which provided, in pertinent part:

(a) The Contractor shall keep on the work site a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both.

The VA contract contained two sets of drawings—one set pertaining to the SCI Center and the other to the clinical addition. Architectural Drawing No. 74–71R, pertaining to the SCI Center, and Architectural Drawing No. 2–240R, pertaining to the Clinical Addition, both were entitled "Door Schedules and Details." Architectural Drawing No. 74–71R includes detail 74–71/04 entitled "Elevation of Framing at Door Opening," which applies to metal door frames and requires the installation of ¾ inch channel bracing. Architectural Drawing No. 2–240R identifies this same detail as 2–240/04 and also requires the installation of ¾ inch channel bracing.

Centex subsequently subcontracted various work to Cleveland Construction, Inc. ("Cleveland"), including the installation of in-terior door frame systems in the SCI Center. The subcontract required, in pertinent part:

34. STATEMENT OF WORK AND SUB-CONTRACT PRICE

＊　　＊　　＊　　＊　　＊　　＊

B. INCLUSIONS. In addition to the foregoing, it is further understood and agreed that this Subcontract also includes the furnishing and installation of the below listed items regardless of whether or not they are in the above specification section(s), or any other specification section, or shown on the plans:

4. The receiving, unloading, and storing of all hollow metal frames as directed by the Contractor's project office. Subcontractor will distribute, install and grout (if required) all frames, including elevator frames, and provide all wall framing and bracing as required to keep the frames plumb and square.

On November 14, 1995, Centex and Cleveland employees met with the VA's senior resident engineer, Paul Newman, to discuss several outstanding issues regarding the VA contract. At this meeting, Cleveland asserted that, because detail 74–71/04 was not described as a "typical" detail on the contract drawing, it was therefore not part of the VA contract. In his response dated December 14, 1995, Mr. Newman stated "[t]he 3/4" channel as wall bracing shown by 74–71/04 is in the drawings. Because the detail 74–71R/04 is in the contract you are required to install the wall bracing.

On December 21, 1995, Centex again disputed, in writing, Mr. Newman's assertion that the VA contract required the installation of the door support material at the hollow metal door frames. On January 22, 1996, Mr. Newman responded to Centex's letter, writing "[o]ur position is that details is on the drawings, so it is part of the contract and therefore must be incorporated into construction." On February 7, 1996, Centex and Cleveland employees again met with Mr. Newman to discuss detail 2–240/04.[1] At that

---

1. These discussions did not center on the 7–71/04 detail because, by this time, the SCI had, for all practical purposes, been framed out.

time, the VA directed Cleveland to install the door opening bracing in the clinical addition in accordance with the contract detail. On February 21, 1996, Cleveland informed Centex that it would install channel bracing at all door openings at the clinical addition pursuant to detail 2/240–04, but added that it would submit a proposal for the added cost associated with the installation.

On December 10, 1997, Centex submitted a claim to the VA's contracting officer in the amount of $82,777, asserting that it was entitled to this amount as a result of the "extra contractual requirements" imposed by the VA in connection with the installation of channel supports at hollow metal door frames. On March 24, 1998, the contracting officer denied Centex's claim. On March 23, 1999, Centex filed suit in this court. On October 25, 2000, defendant filed its Motion for Summary Judgment. Subsequently, this case was reassigned to the undersigned judge. On May 15, 2001, this court heard oral argument in this case.

## II. Discussion

"Summary judgment is ... an integral part of the Federal Rules," the Supreme Court has stated, and is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Such is the case here.

■ Contract interpretation is a matter of law and, as such, is amenable to disposition on summary judgment. *See Textron Defense Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir.1998); *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed.Cir.1996); *ECC Intern. Corp. v. United States*, 43 Fed. Cl. 359, 365

(1999). In interpreting a contract, the court's examination begins—and in this particular case, ends—with the plain language used in the contract. *Textron Defense Sys.*, 143 F.3d at 1469; *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991); *Craft Mach. Works Inc. v. United States*, 926 F.2d 1110, 1113 (Fed.Cir.1991). The court must interpret the contract as a whole to give reasonable meaning to all its parts and to avoid "conflict or surplusage of its provisions." *Granite Const. Co. v. United States*, 962 F.2d 998, 1003 (Fed.Cir.1992). *See also Input/Output Technology, Inc. v. United States*, 44 Fed.Cl. 65, 70 (1999).

■ In the instant case, the drawings attached to the contract clearly required the installation of ¾ inch channel bracing when metal door frames were utilized. However, this requirement was not reflected in the specifications of the contract. As recited above, however, a standard clause required by the FAR ( 48 C.F.R. § 52.236–21(a)) was included in the contract, which indicated, in pertinent part, that—"[a]nything ... shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both." This clause has consistently been interpreted to require a contractor to comply with drawings even where details depicted therein are not listed in the specifications. *See George Hyman Constr. Co. v. United States*, 215 Ct.Cl. 70, 564 F.2d 939, 942–44 (1977) ("[t]his paragraph obviously makes the work shown on [the] drawing ... required work, irrespective of plaintiff's interpretation of the specifications"); *Unicon Management Corp. v. United States*, 179 Ct.Cl. 534, 375 F.2d 804, 805 (1967); *Halvorson–McLaughlin Constructors*, 68–1 BCA ¶ 6814, 1968 WL 551 (1968) ("[w]e are confronted with an omission in the specifications for a requirement clearly shown in the drawings. The provision of Clause 2, 'Specifications and Drawings,' is designed to take care of just such a situation").[2] Accordingly, the inclusion of this

2. *See also Hobbs Constr. & Dev., Inc.*, 91–1 BCA ¶ 23,518, 1990 WL 186292 (contractor required to install roof vents shown on the drawings but not mentioned in the specifications); *Reed & Reed, Inc.*, 87–3 BCA ¶ 20,175, 1987 WL 41326

(1987) (same conclusion as to electrical receptacle boxes shown only on contract drawings); *W.S. Meadows Engineering, Inc.*, 78–1 BCA ¶ 12,863, 1977 WL 2127 (1978) (same conclusion as to removal of concrete foundation);

clause in the contract at issue obliged plaintiff to comply with details of drawings as if they were in the specifications, thereby requiring plaintiff and it subcontractor to install the channel bracing in question.[3]

Plaintiff, however, claims that, notwithstanding this standard clause, it is unreasonable to hold it to every minute detail in the voluminous drawings attached to the contract, particularly because such details ordinarily would be expected to be found in the specifications. "This lack of information," it contends, "would lead a reasonable contractor to conclude that channel bracing was not required." But, this contention ignores the fact that plaintiff signed a contract that indicated otherwise. Indeed, even assuming that a reasonable contractor would act in the fashion that plaintiff claims—far from apparent, in this court's view—it remains that any notion that the scope of the specifications and drawings clause is limited by some overarching concept of commercial reasonableness, essentially permitting a contractor to ignore certain details in the drawings, was soundly rejected by the Court of Claims in *Unicon Management Corp., supra*. In that case, a contractor sought compensation for installing steel plate covers on certain floors, a require-

ment that was indicated in the drawings, but not in the specifications. Judge Oscar Davis, writing on behalf of a unanimous court, rejected a similar argument to that made by plaintiff here, stating that: "if they examined the plans and specifications carefully they could not have helped notice the drawings which specifically embodied the ... requirement. If they were not aware of this fact they should have been." 375 F.2d at 806. The court concluded that if "plaintiff did not study the plans and specifications before bidding, it cannot complain that the [Armed Services] Board [of Contract Appeals] and this court strive, in accordance with the established canon, to read the relevant contract provisions together rather than at odds." *Id.* at 807. Based upon *Unicon*, this court concludes that the fact that the contract in question contained numerous drawings does not excuse plaintiff from being familiar with those drawings and complying with the actual contract it executed. *See also Halvorson–McLaughlin Constructors, supra* (refusing to subscribe to notion that this standard clause "should be interpreted literally when applied to small contracts, and liberally when applied to large contracts").[4]

*McCloskey & Co.*, 73–2 BCA ¶ 10,143, 1973 WL 1427 (same conclusion as to luminous ceiling for elevators); *Picoult*, 67–2 BCA ¶ 6601, 1967 WL 646 (1967) (same conclusion as to use of higher voltage motors); *Governor Corp.*, 67–1 BCA ¶ 6389, 1967 WL 800 (1967) (same conclusion as to waterproofing); *Henry J. Kaiser Co.*, 1956 WL 219 (Eng. B.C.A.1956) (same conclusion as to insulation). Likewise, where detail has been provided in the specifications, but not in the drawings, courts have relied on this standard clause in holding that a contractor was obliged to comply with the specifications. *See B.D. Click Co. v. United States*, 222 Ct.Cl. 290, 614 F.2d 748, 753 (1980); *Industrial Contractors, Inc.*, 72–1 BCA ¶ 9412, 1972 WL 1073 (1972); *Baldi Construction Engineering, Inc.*, 70–1 BCA ¶ 8230, 1970 WL 820 (1970).

**3.** Citing *Foley Co. v. United States*, 26 Cl.Ct. 936, 939, 941 (1992), *aff'd*, 11 F.3d 1032 (Fed.Cir. 1993), plaintiff claims that defendant may not rely on the specifications and drawings clause discussed above because that clause was not specifically invoked by the contracting officer's in his decision. In *Foley*, this court stated that "[t]o allow the government to assert alternate grounds in support of a contracting officer's decision, which were not the subject of that decision, would deprive contractors of the opportunity to choose the forum for that particular claim." 26

Cl.Ct. at 941. It is important, however, to understand the context of these statements—*Foley* involved affirmative defenses and counterclaims that arose from contract clauses entirely different from those considered by the contracting officer in dealing with the contractor's claim there. By comparison, the argument defendant has made in this case neither involves an affirmative defense nor a counterclaim, but instead involves a clause in the contract that directly relates to the subject on which the contracting officer ruled— and one which was clearly discussed throughout the dispute leading up to the formal denial of the claim. In these circumstances, neither *Foley* nor, for that matter, the Contract Disputes Act itself, precludes defendant from relying on the specifications and drawings clause. *See Wilner v. United States*, 24 F.3d 1397, 1401–02 (Fed.Cir. 1994) (emphasizing the *de novo* nature of proceedings under the CDA).

**4.** Cases cited by plaintiff such as *Blinderman Constr. Co., Inc. v. United States*, 39 Fed.Cl. 529 (1997) and *Carothers Constr. Co., Inc. v. United States*, 20 Cl.Ct. 556 (1990), are not to the contrary. Those cases did not involve application of the standard clause at issue here, but instead involved latent ambiguities in which the court applied the doctrine of *contra proferentum*. That doctrine is inapplicable here because the con-

Plaintiff also claims that it was not obliged to install the bracing because it was neither identified as "typical" in the drawings nor highlighted elsewhere in the contract. But, again, plaintiff fails to anchor this proposition to anything in the contract's language. The details 71–74/04 and 2–240/04, incorporating the bracing requirement, clearly were shown on the drawings and nothing in the contract limits its requirements to those identified as typical—indeed, if that were true, very few of the details in the drawings would be binding as most appear not to have been labeled "typical." Other documents in the record confirm that both plaintiff and its subcontractor understood that they were required to implement details in the drawings whether or not they were labeled "typical," without any expectation of additional compensation.[5] Moreover, while excerpts of depositions in the record indicate that the agency contracting officials expected a contractor to incorporate into the construction details in the plans that were identified as typical or otherwise highlighted in the contract, there is no indication in these depositions or elsewhere in the record that those officials believed that *only* in those circumstances was a contractor required to comply with a detail listed in the drawings. In short, this deposition testimony does not suggest any variation in practice from the plain terms of the contract.

Finally, this case is clearly distinguishable from *Kos Kam Inc.,* 89–3 BCA ¶ 21,980, 1989 WL 74761 (1989), on which plaintiff heavily relies. There, the plaintiff pursued an equitable adjustment for the installation of sound attenuation wallboard at certain locations in military family housing units. The specifications indicated that soundproofing would be required "as reflected on the drawings" for the contract. One set of drawings indicated certain walls in first-floor units with two lines and others with three lines and included bubble references to a detail 7A–67; another set of drawings described detail 7A–67 as involving "sound deadening at party walls

between units." In bidding, the contractor allegedly construed the drawings as requiring the soundproofing only where there was a specific reference to detail 7A–67. The government, however, directed the contractor to install the soundproofing at all party walls on first and second floor units and subsequently rejected the contractor's claim for additional compensation, asserting that the soundproofing was indicated either by the triple lines in the plan or by reference to "party walls" in the detail. The board held that the drawings that contained the triple walls on the first floor units created a patent ambiguity, and that Kos Kam's failure to inquire whether soundproofing was required for these walls barred it from receiving additional compensation. The board, however, reached a different conclusion as to walls on the second floor that were marked only with double lines, finding, as to these walls, that neither the drawings, nor the specifications, reflected the soundproofing requirement. As such, it concluded that the soundproofing on the second floor "was substantial work simply omitted from the specifications and drawings," thereby entitling Kos Kam to an equitable adjustment in the contract price.

Plaintiff contends that *Kos Kam* "requires that there must be something in the specifications or on the drawings to alert the contractor of the obligation to apply a detail." But, this is clearly an overstatement, as *Kos Kam* merely suggests that where the specifications refer to the drawings and there is either *no* indication in the drawings that a detail applies or, relatedly, indication that the detail applies in some places, but not in others, compensation is owed for incorporating the detail in places where the drawings did not so indicate. Here, by comparison, the requirement for channel bracing was clearly indicated on the drawings and thus no question arises as to whether there was a patent or latent ambiguity as to this detail for, in reality, there was no ambiguity at all.

tract is clear in indicating that details in the drawings are part of the contract and plaintiff's contrary construction, therefore, is not reasonable. *See Blinderman,* 39 Fed.Cl. at 538 (*"contra proferentum* comes into play only if the non-drafting party's interpretation of the contract is reasonable").

5. In this regard, the contracting officer noted in his final decision that Cleveland applied various details not listed as typical in the VA contract without demanding additional cost.

Accordingly, plaintiff was obliged to ascertain the requirements of the contract on which it was bidding and its failure to do so does not entitle it to an equitable adjustment in price to compensate it for work that was already provided for in the original contract.

## III. Conclusion

For the foregoing reasons, the court **GRANTS** defendant's motion for summary judgment. The Clerk is hereby ordered to dismiss plaintiff's complaint.

